**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 16, 2009

Charles R. Fulbruge III
Clerk

No. 08-10092

DAVID WALLACE CROFT; SHANNON KRISTINE CROFT, as Parents and
Next Friend of minor Children

Plaintiffs-Appellants

v.

GOVERNOR OF THE STATE OF TEXAS, Rick Perry

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before KING, BENAVIDES, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

David and Shannon Croft, as parents and next friends of their three minor children (collectively, the "Crofts"), bring suit against the governor of the state of Texas, Rick Perry ("Perry"), arguing that Texas Education Code § 25.082(d) is an unconstitutional establishment of religion. The district court granted summary judgment in favor of Perry, holding that § 25.082(d) had a secular legislative purpose and was not an establishment of religion. For the following reasons, we affirm.

## FACTS AND PROCEEDINGS

Section 25.082(d) provides for a mandatory moment of silence to be observed in Texas schools in which a student may "as the student chooses, reflect, pray, meditate, or engage in any other silent activity that is not likely to interfere with or distract another student." TEX. EDUC. CODE § 25.082(d). The provision, which became effective September 1, 2003, is a subsection of a broader statute amended at the same time under the heading "School Day; Pledges of Allegiance; Minute of Silence" (the "2003 Amendments"). Texas Education Code § 25.082, in its entirety, provides as follows:[1]

> (a) A school day shall be at least seven hours each day, including intermissions and recesses.
>
> (b) The board of trustees of each school district shall require students, once during each school day at each school in the district, to recite [pledges of allegiance to the United States and Texas flags]
>
> (c) On written request from a student's parent or guardian, a school district shall excuse the student from reciting a pledge of allegiance under Subsection (b).
>
> (b) (d) A The board of trustees of each school district may shall provide for a period the observance of one minute of silence at the beginning of the first class of each school day at each school in the district following the recitation of the pledges of allegiance to the United States and Texas flags under Subsection (b). during which a During the one-minute period, each student may, as the student chooses, reflect, pray, or meditate, or engage in any other silent activity that is not likely to interfere with or distract another student. Each teacher or other school employee in charge of students during that period shall ensure that each of those students remains silent and does not act in a manner that is likely to interfere with or distract another student.

As the underlined and stricken portions indicate, the amendments changed a 1995 statute that was simply entitled "School Day" and provided as follows:

---

[1] The underlined portions are the provisions added or amended in 2003, while the stricken portions are the 1995 provisions that were deleted.

(a) A school day shall be at least seven hours each day, including intermissions and recesses.

(b) A school district may provide for a period of silence at the beginning of the first class of each school day during which a student may reflect or meditate.

TEX. EDUC. CODE § 25.082 (1995). The 2003 statute left untouched a broader, yet related, 1995 provision entitled "Exercise of Constitutional Right to Pray," which states that:

A public school student has an absolute right to individually, voluntarily, and silently pray or meditate in school in a manner that does not disrupt the instructional or other activities of the school. A person may not require, encourage, or coerce a student to engage in or refrain from such prayer or meditation during any school activity.

TEX. EDUC. CODE § 25.901.

As the district court noted, the 2003 moment of silence provision of § 25.082 differs from the 1995 version as follows:

(1) it made the provision of a moment of silence mandatory rather than discretionary; (2) it changed "period of silence" to "one minute of silence"; (3) it added the word "pray" to the list of designated options; (4) it added the catch-all "or engage in any other silent activity that is not likely to interfere with or distract another student"; and (5) it added a provision for teachers or other school employees to maintain discipline during the one-minute period.

*Croft v. Governor of Tex.*, 530 F. Supp. 2d 825, 829 (N.D. Tex. 2008). The 2003 statutory section, on the whole, also made the following changes: (1) it added the pledge of allegiance to the United States flag; (2) it added the pledge of allegiance to the Texas state flag; and (3) it provided a procedure for exemption from reciting either pledge.

Beyond the relative changes and additions represented by the provision itself, the 2003 statute does not include a signing statement or preamble by which legislative intent can be inferred. Nevertheless, transcripts from

committee hearings and floor debates, which were summarized at length by the district court, *id*. at 837–45, provide significant insight into the purpose of the legislation.[2] Pertinent details are as follows:

- On February 11, 2003, in introducing in committee the first draft of Senate Bill 83—which did not include a pledge and was designed to amend § 25.901 (the "right to pray" section), not § 25.082 (the "school day" section)—its sponsor, Senator Wentworth, repeatedly stated, "since the U.S. Supreme Court has [just] upheld [a similar mandatory statute] in Virginia we ought at least to give Texas students the opportunity to reflect, meditate or pray."[3] The senator acknowledged that a period of silence already existed in Texas law (under § 25.082), but expressed a desire to add "prayer" to "bring to the State of Texas . . . the advantage and opportunity [that Virginia students have] already." Senator Wentworth also stated that the bill was prompted by the Supreme Court "ruling upholding a Virginia state statute," and that although it may not restore the audible prayer that "[m]ost Texans" prefer, it is what the Supreme Court now allows, and all that it allows. As to the minute of silence being required, he thought this would help relieve controversy at the local level.

- Discussing the original bill, Senator Wentworth lamented the "coarsening of society" and "the lack of prayer in schools." Yet, he repeatedly asserted that, "for purposes of legislative intent, this is not a prayer bill. . . . It's an opportunity to give people a chance to spend 60 seconds on a daily basis to reflect

---

[2] In articulating the purposes of the 2003 statute, Perry relies on an October 10, 2006 letter by Shirley Neeley, Commissioner of the Texas Education Agency, indicating the purposes of accommodating religion, encouraging thoughtful contemplation, and promoting patriotism. Yet, given that the letter was written several years after the statute's adoption and contemporaneous with this litigation, we need not defer to its interpretation. *See, e.g., In re GWI PCS 1 Inc.*, 230 F.3d 788, 807 (5th Cir. 2000) ("where an agency's interpretation occurs at such a time and in such a manner as to provide a convenient litigation position for the agency, we have declined to defer to the interpretation").

[3] The Virginia law to which Senator Wentworth referred in the committee meeting was a mandatory "minute of silence" that was held constitutional by the Fourth Circuit. *Brown v. Gilmore*, 258 F.3d 265 (4th Cir. 2001). The Supreme Court actually denied certiorari, and never ruled on the merits of the case. *See Brown v. Gilmore*, 534 U.S. 996 (2001). Senator Wentworth acknowledged this distinction later, but argued that it was immaterial.

or meditate or pray." He observed, "we won't know whether they're doing any of those three things . . . [t]hey may be doing something else, because it is actually 60 seconds of silence." Senator Janek added that the approach is "a more civilized moment [for voluntary prayer or meditation] . . . rather than [] the cacophony of the school noises and lockers slamming."

- Senator Wentworth dismissed a challenge to the silent, rather than verbal or physical, nature of voluntary prayer activity in the bill as arguably unconstitutional, and repeatedly stressed his desire to conform to Supreme Court precedent—*e.g.*, "I'm not trying to pass a bill that's going to be struck down by the U.S. Supreme Court, and that's why I've tailored the language to follow another state statute that's already been upheld by the U.S. Supreme Court."

- In the February 2003 committee meeting, concern was raised by legislators about the nature of the bill as an exception to the non-coercion rights in § 25.901, and, as the district court recounted, witnesses testified on both sides of this issue and the bill generally. Pertinently, Kathy Douglas of the Texas Association of School Boards suggested that to "show . . . the legislative intent to separate this issue from the issue of prayer," the bill might be better suited in amending § 25.082 (the "school day"), not § 25.901 (the "right to pray").

- At a March 25, 2003 committee meeting, Senator Wentworth announced that the bill had been altered to amend § 25.082, not § 25.091 (as urged by Ms. Douglas), include pledges to the United States and Texas flags (with an opt-out), and require students to stand. Witnesses testified for and against the bill. An amendment was made to delete the rule that students stand, and the bill unanimously passed (7 to 0) in committee.

- On April 1, 2003, the related House Bill 793 was introduced to the House Public Education Committee by Representative Branch. According to the Governor's representations to the district court,[4] Representative Branch stated to the committee—in response to challenges from colleagues that the bill was "bathed in religio[n]"—that "silence at the beginning

---

[4] The evidence presented for the April 1, 2003 House Committee and May 5, 2003 House floor discussions is limited to transcription of the audio tapes.

of the day is a good thing for students, . . . [and] not only to focus on the patriotism of the country, the love of state, but also a common moment of preparation, deliberation, and meditation to focus on the serious business of educating our students that day." Co-author Representative Bonnen added, "I can tell you the authors' intent . . . [i]t's to give [students] a time to really thing [sic] about the seriousness of the day."

- On April 4, 2003, the senate bill was debated on the floor. At that debate, several senators raised objections to using the word "pray," the mandatory nature of the measure, and that only silent prayer is allowed. Senator Wentworth stated that "this is not a school prayer amendment," "this bill came about as the result of my reading a newspaper account last year of the United States Supreme Court's upholding the Virginia statute," and "[s]chool districts still will be neutral on religion even if this bill is passed . . . ." Senator Lucio added that the pledge helps to "teach our kids Americanism, patriotism," and "to have a moment of silence really gives an opportunity for our children . . . to pray just momentarily to their God and to be thankful that they live in the greatest country in the world." After respective amendments were defeated to revisit the issue in two years and delete the word "pray," the bill passed 27 to 4.

- On May 5, 2003, the bill was debated on the House floor. At that time, Representative Branch asserted that "[t]he primary purpose of S.B. 83 is to promote the core values of patriotism and establish a contemplative period that underscores the seriousness of the education endeavor. It directs school districts to provide for the U.S. pledge, the Texas pledge, that is the pledge to the Texas flag, and also a one minute period of silence."

- Finally, on May 6, 2003, the bill was debated on the House floor. Representative Hupp offered an amendment to make a minute of silence up to local school boards; the amendment was defeated. In support of the bill, Representative Edwards lamented "that a number of undesirable things happened when we took prayer out of school."

- In the final House debate on May 6, 2003, the bill's sponsor, Representative Branch, proclaimed that the bill offers "an

> opportunity for the school children to say the U.S. pledge, the Texas pledge and have this minute of silence when they can do anything they want; but it does set the tone for the day that this is serious business, education and that they can contemplate what they plan to do with their day." In responding to a challenge as to the type of activity as limited to silence, Representative Branch opined, "[a]ll this bill does is tries to have a neutral space, a period of silence . . . [i]t doesn't direct any activity." He stated further that he understood that "a moment of silence which allows for prayer is permissible constitutionally," and that "although [he] might occasionally disagree with the Supreme Court, [he] respect[s] it as the rule of law of the land . . . ." The bill passed 132 to 4, with 1 abstention.

The District Court reviewed all of the legislative history and upheld the statute. It rejected two of the purposes offered by Perry: fostering patriotism and accommodation of religion. But the court held that the addition of "pray" along with other "substantive changes to the activities students could engage in, both prior to, and during, the moment of silence" did serve a secular purpose of encouraging a period of thoughtful contemplation. *Croft*, 530 F. Supp. 2d at 838, 847. As a result, it survived the first prong of *Lemon*. The court also held that the addition of "pray" did not have the primary effect of advancing religion or cause excessive entanglement between government and religion, and so did not violate the Establishment Clause. The Crofts appeal.

## STANDARD OF REVIEW AND APPLICABLE LAW

The parties dispute the correct standard of review for this case. Perry relies on *Lynch v. Donnelly*, 465 U.S. 668, 681 (1984), to argue that a district court's findings on legislative purpose should be affirmed unless clearly erroneous. But *Lynch* came to the Supreme Court following a trial on the merits. *See id.* at 671–72; *Donnelly v. Lynch*, 525 F.Supp. 1150, 1154 (D.R.I. 1981). The same appears to be true of the only other case cited by Perry, *May v. Cooperman*, 780 F.2d 240, 242 (3rd Cir. 1985) (referencing a "final hearing"

and the district court making "findings of fact and conclusions of law in support of a final judgment").

This case, however, comes to us on the district court's grant of summary judgment. Therefore, the normal summary judgment standard of review applies. We review "a grant of summary judgment *de novo*, applying the same legal standard as the district court." *Miller v. Gorski Wladyslaw Estate*, 547 F.3d 273, 277 (5th Cir. 2008). Summary judgment should be rendered if the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The Supreme Court established a general framework for analyzing Establishment Clause challenges in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *Lemon* has three prongs: (1) "the statute must have a secular legislative purpose;" (2) "its principle or primary effect must be one that neither advances nor inhibits religion;" and (3) "the statute must not foster an excessive government entanglement with religion." *Id.* at 612–13 (internal quotations omitted). In addition, a statute cannot discriminate among religious sects without showing a compelling governmental interest and a "close fit." *See Larson v. Valente*, 456 U.S. 228, 247 (1982).

In evaluating a secular purpose, it "must be sincere; a law will not pass constitutional muster if the secular purpose articulated by the legislature is merely a sham." *Wallace v. Jaffree*, 472 U.S. 38, 64 (1985) (internal quotation marks omitted). But the statute need not have "exclusively secular" objectives. *Id.* Rather, the "touchstone" is neutrality, and it is only "[w]hen the government acts with the ostensible and predominant purpose of advancing religion [that] it violates that central Establishment Clause value of official religious neutrality." *McCreary County v. ACLU*, 545 U.S. 844, 860 (2005). In *McCreary County*, the Supreme Court reviewed all of the times that it had invalidated a statute because of an illegitimate purpose and determined that "[i]n each case,

the government's action was held unconstitutional only because openly available data supported a commonsense conclusion that a religious objective *permeated* the government's action." *Id.* at 863 (emphasis added). While the purpose requirement "serves an important function," it is "rarely . . . determinative." *Id.* at 859 (quotation omitted). This is "presumably because government does not generally act unconstitutionally, with the predominant purpose of advancing religion." *Id.* at 863.

What is important for *Lemon*'s purpose prong is the overall legislative purpose of the allegedly unconstitutional provision, not a particular legislator's motive in supporting it. *Bd. of Educ. of Westside Cmty. Schs. v. Mergens*, 496 U.S. 226, 249 (1990). Some legislators may have religious motives, but that alone does not invalidate an act with an otherwise secular legislative purpose. *See, e.g.*, *id.* ("Even if some legislators were motivated by a conviction that religious speech in particular was valuable and worthy of protection, that alone would not invalidate the Act, because what is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law."). Long ago, the Supreme Court found that the "daily recitation of the Pledge of Allegiance, or even the observance of a moment of reverent silence at the opening of class, may . . . serve the solely secular purposes of the devotional activities without jeopardizing either the religious liberties of any members of the community or the proper degree of separation between the spheres of religion and government." *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 281 (1963). More recently, the Supreme Court and three Circuit Courts have heard direct challenges to moment of silence statutes.

In *Wallace v. Jaffree*, the Supreme Court struck down an Alabama statute that had amended an earlier moment of silence statute to add the option for voluntary prayer. 472 U.S. at 61. In *Wallace*, the legislative history was absolutely clear that the statute had the purpose of advancing religion. *Id.* at

56–57. The sponsor of the bill stated that it was an "effort to return voluntary prayer" to public schools, and that the bill had no secular purpose. *Id.* Nor did the state "present evidence of *any* secular purpose." *Id.* at 57. The only substantive change was the addition of "or voluntary prayer" to a previous statute which mandated a moment of silence "for meditation." *Id.* at 58. The Court found that there was no secular purpose for this change, since voluntary prayer was already protected by the previous statute. *Id.* Because there was no secular purpose, the statute violated the first prong of *Lemon* and was unconstitutional. *Id.* at 61.

Justice O'Connor concurred in *Wallace*, but wrote separately to examine moment of silence statutes in more detail. She found that a moment of silence is "not inherently religious," and that by mandating such a period, "a State does not necessarily endorse any activity that might occur during the period." *Id.* at 72–73. Even if the statute specifies a student may pray, "the State has not thereby encouraged prayer over other specified alternatives." *Id.* at 73. But if a teacher tells children to pray, or if the face of the statute or legislative history promotes prayer over other alternatives, then the state may be improperly endorsing religion. *Id.* Examining legislative purpose, however, is a "deferential and limited" inquiry, and courts have "no license to psychoanalyze the legislators." *Id.* at 74. "If a legislature expresses a plausible secular purpose for a moment of silence statute in either the text or the legislative history . . . then courts should generally defer to that stated intent." *Id.* at 74–75. "Since there is arguably a secular pedagogical value to a moment of silence in public schools, courts should find an improper purpose behind such a statute only if the statute on its face [or] in its official legislative history . . . suggests it has the primary purpose of endorsing prayer." *Id.* at 75. In *Wallace*, however, given its legislative history and the fact that no secular purpose was advanced, Justice

O'Connor found that "the conclusion is unavoidable that the purpose of the statute is to endorse prayer in public schools." *Id*. at 77.

Soon after *Wallace*, the Third Circuit invalidated a New Jersey moment of silence statute. *May*, 780 F.2d 240. The District Court in *May* had found that the New Jersey statute, which does not mention prayer, violated all three prongs of *Lemon*. *Id*. at 247. The Third Circuit held that there was no violation of the effect or entanglement prongs. *Id*. at 247–50. The district court, however, ruling before *Wallace*, had found that the state's proffered secular purpose—"to provide a transition from nonschool life to school life"—was pretextual. *Id*. at 251. The Third Circuit could not say that this finding was "clearly erroneous," and so accepted the district court's finding that there was no secular purpose. *Id*. at 252. The Third Circuit did not find any evidence, however, that the statute was passed to encourage prayer over other alternatives. *Id*. But "because the Supreme Court has expressly required a secular purpose when considering a constitutional challenge under the establishment clause and because the district court made a finding that [the statute] lacked such a secular purpose, we hold the New Jersey statute to be unconstitutional under the first amendment." *Id*. at 253.

In 1997, the Eleventh Circuit upheld a Georgia moment of silence statute in *Bown v. Gwinnett County School District,* 112 F.3d 1464 (11th Cir. 1997). The statute allowed for a moment of silence, but specifically stated that it was not intended to be conducted as a religious service, and a preamble to the act stated that the purpose was to allow a moment of quiet reflection for students. *Id*. at 1466. The legislative history indicated that the sponsor had brought the act forward as part of a package to reduce youth violence. *Id*. at 1467. The legislative transcripts revealed that some House members wanted to institute school prayer and saw the act as accomplishing that goal. *Id*. A few members opposed the act for that reason, although several spoke in favor and stated that

11

they did not believe that it authorized school prayer or had a religious purpose. *Id.*

The *Bown* court first examined the statutory language, and found that the preamble and act espoused a clear secular purpose of allowing a moment of quiet reflection. *Id.* at 1469–71. While the court noted that the legislative history was "somewhat conflicting," it held that it was not inconsistent with this secular purpose. *Id.* at 1471. Even though some of the legislators may have indeed had religious *motives*, the language of the statute revealed a clearly secular purpose, which satisfied the first *Lemon* prong. *Id.* at 1472. The court also found that there was no impermissible effect of the statute or any resulting excessive entanglement of the state with religion. *Id.* at 1472–74.

In 2001, the Fourth Circuit upheld a Virginia moment of silence statute in *Brown v. Gilmore,* 258 F.3d 265 (4th Cir. 2001). In 1976, Virginia enacted a moment of silence statute which authorized, but did not require, schools to observe a moment of silence where students could "meditate, pray, or engage in any other silent activity." *Id.* at 270. The Virginia legislature later amended the statute in 2000 to require that every school provide the minute of silence. *Id.* at 271. In analyzing the legislative purpose, the Fourth Circuit first examined its text and found two secular purposes: to promote non-religious meditation and to accommodate religion. *Id.* at 276. The court held that a "statute having dual legitimate purposes—one clearly secular and one the accommodation of religion—cannot run afoul of the first *Lemon* prong." *Id.* at 277. Nor did the statute facially violate the second prong of *Lemon* "given the statute's facial neutrality between religious and nonreligious modes of introspection and other silent activity." *Id.* The court also did not find an excessive entanglement, holding that the "involvement in religion is negligible, [with the teacher only] informing students that one of the permissible options during the moment of silence is prayer." *Id.* at 278.

12

In all four of these cases, none of the courts found that moment of silence statutes had the primary effect of advancing or inhibiting religion, or fostered excessive government entanglement with religion. All of the courts focused on the legislative purpose of these statutes. *Wallace* overturned the Alabama statute because the state did not advance *any* secular purpose, and the statute's sponsor explicitly stated that the statute was meant to bring prayer back into schools. *May* overturned the New Jersey statute because the district court had found that the proffered secular purpose was pretextual. That finding was not clearly erroneous, and with no other secular reasons offered, the Third Circuit was compelled to find the statute unconstitutional. All of these cases follow the Supreme Court's assertion in *McCreary* that statutes have only been overturned on the purpose prong of *Lemon* if a religious purpose "permeated" the government's action or the secular purpose serves only as a "sham."

## DISCUSSION

### A. Standing

Constitutional standing has three elements: (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Alliance Defense Fund (ADF) *amicus* brief and Perry argue that the Crofts have not stated any sufficient injury, and so lack standing to bring this case.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The question then becomes whether the Crofts have alleged a personal loss of First Amendment freedoms. It is not enough simply to argue that there has been some violation of the Establishment Clause; they must

13

allege a personal violation of rights.[5] *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 n.22 (1982).

The Crofts have children who are required to observe a moment of silence every day they attend school. The Crofts' complaint alleges that the moment of silence statute violates the Establishment Clause and that their children's constitutional rights are being violated by being required to undergo the moment of silence. Perry argues that the Crofts have not alleged any specific injury that resulted from participating in the moment of silence.

In *Doe v. Tangipahoa Parish School Board*, 494 F.3d 494 (5th Cir. 2007) (en banc), the Fifth Circuit evaluated standing in an Establishment Clause context. The plaintiffs were challenging prayers said at school board meetings, and the court found that unless they could prove that they were "exposed to" and "injured by" those prayers, they lacked standing. *Id.* at 497. Because there was no evidence that the plaintiffs had ever attended a school board meeting, however, they could not prove any injury from the prayers. *Id.* at 499. The plaintiff bears the burden to prove standing "with the manner and degree of evidence required at successive stages of the litigation." *Id.* at 498 (quoting *Lujan*, 504 U.S. at 561). But the *Doe* court specifically noted that they could "certainly 'assume' that the Does may have been offended by an invocation at a school board meeting, if they attended one." *Id.* After a bench trial based on stipulations, however, the Does had brought forward no evidence that they had ever attended a school board meeting and heard the offending prayer, so they lacked standing. *Id.*

At this stage of litigation—summary judgment—the plaintiffs' burden on standing is only to raise an issue of material fact. The Crofts have alleged that

---

[5] The Crofts have not argued that they have taxpayer standing to challenge the statute, or that they have suffered "psychological discomfort," so we need not consider those arguments addressed by Perry and the ADF *amicus*.

their children are enrolled in Texas public schools and are required to observe the moment of silence daily. Perry does not dispute this fact, and while still a party, the school district admitted in its answer that the Crofts' children attended school there. The Crofts' children are definitely present for the moment of silence, and like in *Doe*, we can assume that they or their parents have been offended—else they would not be challenging the law. That is enough to establish standing at this stage of the suit.

The ADF *amicus* claims that a moment of silence cannot violate the Establishment Clause, as there is no active religious component. But that is a question to be determined on the merits, which must come after determining whether we have jurisdiction to hear the case. *See, e.g.*, *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 128 S.Ct. 2709, 2716 (2008) ("[W]e bear an independent obligation to assure ourselves that jurisdiction is proper before proceeding to the merits."). Because the Crofts have claimed a personal violation of their First Amendment rights, we have jurisdiction to determine on the merits whether those rights have in fact been violated.

## B. Establishment Clause

### 1. *Purpose*

In his brief, Perry advances three secular purposes for the 2003 Amendments: fostering patriotism, providing a period for thoughtful contemplation, and protecting religious freedom. The 2003 Amendments changed the way that every schoolchild in Texas begins the day. They provide for the recitation of the pledges of allegiance to the flags of the United States and Texas, followed by a minute of silence for students to "reflect, pray, meditate, or engage in any other silent activity . . . ." TEX. EDUC. CODE § 25.082. On its face, the statute seems to serve two of the above purposes: of fostering patriotism (for both America and the State of Texas), and of providing a period for thoughtful contemplation. From the statutory language alone, it does not appear that the

legislative purpose in adding the term "pray" to § 25.082(d) is to advance religion, particularly since the bill expressly allows for any silent use of the moment of silence, either religious or non-religious.

Regarding the third stated purpose, of protecting religious freedom, this purpose does not appear on the face of the statute. While the option to "pray" is included in the 2003 Amendments, Texas already had a statute specifically stating that students have "an absolute right" to "silently pray or meditate in school." TEX. EDUC. CODE § 25.901. Any purpose of protecting religious freedom was already accomplished by this earlier statute. There is also no state-imposed burden on free exercise rights that the 2003 Amendments protect against, and so "protecting religious freedom" does not seem to be a valid purpose on the face of the statute. *See Wallace*, 472 U.S. at 57 n.45 ("[I]t is undisputed that . . . there was no governmental practice impeding students from silently praying for one minute at the beginning of each schoolday; thus, there was no need to 'accommodate' or to exempt individuals from any general governmental requirement because of the dictates of our cases interpreting the Free Exercise Clause.").

Prior to the 2003 Amendments, Texas already had a moment of silence statute that allowed districts to provide for a "period of silence" where students might "reflect or meditate." TEX. EDUC. CODE § 25.082(b) (1995). The 2003 Amendments, however, include several substantive changes such as the addition of the pledges, making the moment of silence mandatory, establishing the indefinite "period" as "one minute," and allowing students to "pray" *or* "engage in any other silent activity." This case is thus somewhat different than *Wallace*, where the Supreme Court found that the only substantive change was the addition of the words "or voluntary prayer."[6] 472 U.S. at 58–59. As such, we

---

[6] The Supreme Court considered two other textual changes in *Wallace*: that the new statute applied to all grades and that it changed the word "shall" to "may." 472 U.S. at 58.

must consider all of the substantive changes in evaluating the purpose behind the 2003 Amendments.

The Crofts focus on the addition of the word "pray" without examining the other changes. But the amendments were introduced as a package to change the start of every school day to include the pledges of allegiance and a more comprehensive list of appropriate activities during the minute of silence (itself changed from a period of silence); in fact, during the legislative process, it was purposefully changed from being a bill that amended the exercise of a right to pray to being one that amended the beginning of the school day. This is not an omnibus bill with provisions that have little to no relation to one another. The Crofts do not point to any case law requiring us to parse the legislature's intent so finely as to go word by word looking for religious purpose. In *Wallace*, the only reason that the Supreme Court focused solely on the addition of "prayer" was because that was the *only* substantive change in the amendment that affected the children at issue. 472 U.S. at 58–59. Conversely, in *Bown*, the Eleventh Circuit considered as indicative of legislative purpose that the bill was brought forward as part of a legislative package aimed at reducing youth violence. 112 F.3d at 1467. Here, we have multiple substantive changes altering the beginning of every Texas public school day, including the option to engage in "*any* other silent activity" during the moment of silence. TEX. EDUC. CODE § 25.082(d) (emphasis added). We consider the purpose of the 2003 Amendment, including the addition of the word "pray," in this context.

From the bill's text, the obvious purpose of the pledges is to inculcate patriotism among students. Following the pledges with a minute of silence then allows time for reflection before starting the school day. Thus, at least from the

---

Neither change, however, had any effect on the students involved in the litigation, who were in "kindergarten or second grade" and to whom the mandatory language continued to apply. *Id.* at 59. In this case, the many substantive changes to the statute did apply directly to the Crofts' children.

statutory text, it seems that the purpose of the 2003 Amendments is to foster patriotism and provide for a period, if a student so desires, of thoughtful contemplation. Within this context, the purpose of § 25.082(d) is clearly permissible. In addition to adding "pray," the new text adds "engage in any other silent activity that is not likely to interfere with or distract another student." The neutral, non-coercive purpose of providing examples of permissible silent activities during the minute of silence at the start of a now more organized and contemplative school day is buttressed further by the fact that § 25.901, which still provides that "[a] person may not require, encourage, or coerce a student" vis-a-vis prayer, was intentionally left unamended. TEX. EDUC. CODE § 25.901.

The legislative history generally supports these secular purposes.[7] Unlike in *Wallace*, where the sponsoring state senator stated that his sole purpose for the bill at issue was "an effort to return voluntary prayer to the public schools," 472 U.S. at 57 (internal quotation marks omitted), the supporting legislators in Texas, particularly in the House debates, emphasized the need for an opportunity to begin the school day with patriotic pledges and a reflective moment. In *May*, the Third Circuit rejected the "transition from nonschool life to school life" as a pretext, citing district court findings about a lack of pedagogical support and a history of legislative efforts to "return prayer to the public schools." 780 F.2d at 251–52. Here, there is no pedagogical evidence to rebut legislative intent, there are no relevant district court findings on which to defer, and there is no evidence of a steady "prayer in schools" effort.

Although Senator Wentworth (and at least one House member) cited "lack of prayer in schools" in lamenting various societal ills, he repeatedly emphasized

---

[7] Where, as here, a valid secular purpose can be gleaned from the text of the statute at issue, we are not convinced of the wisdom of reviewing legislative history, an arduous and potentially risky task. Nevertheless, because the history here supports the textual purpose, it is unnecessary to belabor the point.

that "for purposes of legislative intent, this is not a prayer bill." The House sponsors also emphasized the non-religious purposes of the law even more consistently. On the whole, the debates suggest a history more similar to *Bown* and *Brown*, where several reasons, including the return to prayer but also purely secular ones such as a reflective moment, were given in support of the pertinent legislation and passed constitutional scrutiny. *See Brown*, 258 F.3d at 277; *Bown*, 112 F.3d at 1471. "Indeed, the *Wallace* Court noted that even though a statute is 'motivated in part by a religious purpose' it may still satisfy the *Lemon* test." *Brown*, 258 F.3d at 277 (quoting *Wallace*, 472 U.S. at 56). Even if some legislators had religious motives in promoting this legislation, there are clear secular legislative purposes present. This is unlike *Wallace* or *May*, where there were really no secular purposes at all.

Finally, unlike Alabama's "campaign of defiance" in *Wallace*, as the Fourth Circuit described it in *Brown*, 258 F.3d at 279, and New Jersey's history "of other less facially neutral efforts to return prayer to the public schools" in *May*, 780 F.2d at 252, the effort in Texas was an isolated one to conform to current law, as the legislature saw it. The legislative history repeatedly indicates that the statute at hand was the direct product of the success of the Virginia statute in *Brown*. In adding the word "pray," Senator Wentworth conceded that he was amending existing state law vis-a-vis school prayer; yet, in doing so, he was trying to afford an "opportunity" to Texas students otherwise now enjoyed by those in Virginia. Whether this bill was needed is debatable, but nothing in the record can rebut the timing or purpose of Senator Wentworth's bill marking it as one that respects, rather than challenges, existing constitutional law. The senator and his House colleagues repeatedly emphasized the importance of conforming the bill to Supreme Court precedent—hardly evidence of a religious purpose.

While there were references by some legislators to returning prayer to schools, the religious motives of some legislators should not deflect us from the secular purposes contained in the plain text of § 25.082(d) and espoused by the legislature to justify the 2003 Amendments. Our review here is deferential, and it is very clear that the Texas legislature had a plausible secular purpose to pass these Amendments. As a result, they survive the first *Lemon* prong.

## 2. *Primary Effect*

The Crofts argue that the primary effect of the 2003 Amendments was to "advance certain forms of mainstream Protestant Christian religion, while inhibiting less mainstream religions." Their argument is also that by including "pray," the state has given religious people a benefit because they need not consult a lawyer to know that their children can pray during the moment of silence while non-religious people must consult a lawyer to find out that their children may "not pray" during the same period.

Again, the Crofts focus very narrowly on the addition of the word "pray" while ignoring all of the other substantive changes to the statute. Their argument that parents must consult a lawyer to determine that their children may "not pray" is misguided given the fact that the 2003 Amendments clearly state that children may pursue "*any* other silent activity" during the moment of silence. TEX. EDUC. CODE § 25.082(d) (emphasis added). "Not praying" is thus covered by the catchall provision added by the 2003 Amendments.

There is nothing in the record to suggest that the primary effect of the 2003 Amendments is to advance Protestant Christianity. The statute is facially neutral between religious and non-religious activities that students can choose to engage in during the moment of silence. *See Brown*, 258 F.3d at 277. Nor does the word "pray" by itself connote an endorsement of Protestant Christianity.

20

As Justice O'Connor stated in her *Wallace* concurrence: "It is difficult to discern a serious threat to religious liberty from a room of silent, thoughtful schoolchildren." *Wallace*, 472 U.S. at 73. None of the courts examining moment of silence statutes have found that the primary effect has been to advance or inhibit religion, and the Crofts point to no case law that supports their contentions. Instead, the primary effect of the 2003 Amendments seems to be the same as the legislative purposes shown above: fostering patriotism and mandating a moment of quiet reflection. Especially when analyzing these Amendments in a facial challenge, we should not allow speculative fears to creep into our analysis. *See Brown*, 258 F.3d at 277–78. The 2003 Amendments do not have the primary effect of advancing religion, and so survive the second *Lemon* prong.

Nor do arguments that the 2003 Amendments discriminate among religious sects have merit. The Crofts claim that other religious sects may need to make noise or motion in order to pray, and so the Amendments allow Christian prayer while not allowing other forms of prayer. But as the *May* court found, this "is a non sequitur. The statute simply does not address the problem of accommodating the beliefs of those whose prayer must be oral or otherwise self expressive. Undoubtedly the school environment requires limitation upon the time, place, and manner of such self expression, even when it is religiously motivated." 780 F.2d at 248. The statute provides for a minute of *silence* and allows any non-disruptive *silent* activity. This requirement that the activity, including possible prayer, be silent does not discriminate among religious sects.

### 3. *Excessive Entanglement*

The Crofts argue that the 2003 Amendments cause excessive government entanglement with religion by requiring that teachers regulate student behavior to ensure silence and no distractions during the moment of silence. The Crofts argue that this is a delegation of legislative power to teachers.

Again, no court has ever accepted—especially on a facial challenge—that a moment of silence statute is excessive government entanglement with religion. Teachers are simply enforcing silence and preventing classroom distractions. As the *Bown* court explained:

> The fact that a teacher must stop a student who prays audibly or otherwise makes noise during the moment of quiet reflection does not result in excessive government entanglement with religion. There are many times during any given school day when teachers tell their students to be quiet and when audible activity of any kind is not permitted. The fact that this particular period of silence is mandated statewide does not create entanglement problems.

112 F.3d at 1474. Delegating this responsibility to teachers is not a delegation of legislative powers, as the legislature would not normally have the power to enforce discipline in classrooms. Rather, it is direction to the executive branch to enforce the law.

The Crofts raise the possibility that teachers may confiscate prayer beads as distracting or prohibit certain religious or non-religious activities. All of these speculative possibilities may be fertile ground for as-applied challenges to the statute if they occur. But we should not engage in such speculation on a facial review of the law. The statute here is neutral and simply instructs teachers to maintain discipline in their classrooms during the moment of silence. This is not, on its face, an excessive entanglement with religion, and so the 2003 Amendments survive the third *Lemon* prong.

## CONCLUSION

The Crofts have standing to challenge the 2003 Amendments. But the Amendments are constitutional and satisfy all three prongs of the *Lemon* analysis. There is no excessive entanglement, and the primary effect of the Amendments is not to advance religion. The most difficult prong—for this and for moment of silence statutes generally—is legislative purpose. But our review of legislative history is deferential, and such deference leads to an adequate

secular purpose in this case. While we cannot allow a "sham" legislative purpose, we should generally defer to the stated legislative intent. Here, that intent was to promote patriotism and allow for a moment of quiet contemplation. These are valid secular purposes, and are not outweighed by limited legislative history showing that some legislators may have been motivated by religion.

Because the 2003 Amendments survive the *Lemon* test, they are not an unconstitutional establishment of religion, and the judgment of the district court is AFFIRMED.