WILLIAMS, Circuit Judge,
dissenting.
I respectfully dissent. I would affirm the district court’s ruling on the basis that the Silent Reflection and Student Prayer Act (the “Act”) violates the Establishment Clause of the First Amendment. The Act makes what I believe to be an unnecessary reference to prayer, signaling a predominantly religious purpose to the statute. And by enumerating prayer as one of only two specific permissible activities, the Act conveys a message that Illinois students should engage in prayer during the prescribed period as opposed to a host of other silent options. I have concluded that the purpose and effect of the Act is to encourage prayer in public schools, which violates the first two prongs of the Lemon test. See Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).
The Act states that the mandatory period of silence:
*521 [Sjhall not be conducted as a religious exercise but shall be an opportunity for silent prayer or for silent reflection on the anticipated activities of the day.
105 ILCS 20/1.
Why mention prayer at all? If the Act truly is meant to achieve the purpose that its sponsors claim it is — mandating a quiet, meditative time at the beginning of each school day for students to settle down and shift into learning mode — why is it necessary to reference prayer? I recognize that the government’s stated secular purpose for a law is entitled to “some deference.” Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 308, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000), but it is also our duty to ensure that the proffered purpose is “genuine, not a sham, and not merely secondary to a religious objective.” McCreary County, Ky. v. American Civil Liberties Union of Ky., 545 U.S. 844, 864, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005). And we are “particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools,” because “[t]he State exerts great authority and coercive power through mandatory attendance requirements, and because of the students’ emulation of teachers as role models and the children’s susceptibility to peer pressure.” Edwards v. Aguillard, 482 U.S. 578, 583-84, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987).
So while I recognize that we assess a legislature’s stated purpose with some deference, let’s call a spade a spade — statutes like these are about prayer in schools. In my view, the legislature’s decision to make the Act mandatory represents an effort to introduce religion into Illinois public schools, couched in the “hollow guise” of a mandated period of silence. See Brown v. Gilmore, 258 F.3d 265, 282 (4th Cir.2001) (King, J., dissenting). While the secular purposes articulated by the state might not be “shams,” it seems clear to me that to whatever extent they are genuine, they are secondary to religious ones. I share the concerns raised by a number of legislators who expressed their doubts about the true purpose behind amending the Act. As one House member stated during floor debate, “[t]he only reason I can see for requiring this silent moment is to encourage prayer in the public schools.” H.R. Proceedings, 95th Ill. Gen. Assem., May 31, 2007, at 64 (statement of Rep. Currie). And as another representative stated, “[YJes, this doesn’t mandate prayer, but let’s face it that’s what this is about .... [t]he only calls I received about this Bill were people who were rabbis and priests and reverends and people who are interested in having prayer in the public schools.” H.R. Proceedings, 95th Ill. Gen. Assem., Oct. 11, 2007, at 90 (statement of Rep. Lang). I do not believe that the Illinois legislature truly adopted this law with a secular purpose, and for that reason it violates the first prong of the Lemon test. See Lemon, 403 U.S. at 612, 91 S.Ct. 2105; see also Santa Fe, 530 U.S. at 315-16, 120 S.Ct. 2266.
The majority states that there is no legislative history indicating that it was the goal of any legislators to introduce prayer into schools. (Op. at 509, 514-15). I disagree. There are troubling statements in the record indicating religious motivations on the part of some of the Act’s supporters. The bill’s chief sponsor, Senator Kimberly Lightford, said this to the press: “Here in the General Assembly we open every day with a prayer and Pledge of Allegiance. I don’t get a choice about that. I don’t see why students should have a choice.” And when the bill was first up for a vote, some legislators broke out into song on the House floor, singing the following words to the tune of *522 Simon and Garfnnkel’s “Sounds of Silence”:

Hello school prayer, our old friend

It’s time to vote on you again

In our school house without warning

You seek a moment in the morning.

I agree with the majority that there are, of course, statements of secular purpose in the legislative record. But I part ways with my colleagues in that I simply have trouble accepting those purposes as anything more than pretextual. See, e.g., May v. Cooperman, 780 F.2d 240, 251 (3d Cir.1985) (affirming district court’s conclusion that legislators’ stated purpose for period of silence, “to provide a transition from nonschool life to school life,” was pretextual); see also Edwards, 482 U.S. at 594, 107 S.Ct. 2573 (“The plain meaning of the statute’s words ... can control the determination of legislative purpose.”). The Act’s purported secular goal — establishing a period of silence to calm students and prepare them for the day — could be achieved before it was made mandatory in 2007. If Illinois’s public school teachers (who are in the best position to assess the matter) felt students needed a period of silence for a calming, transitional period in the morning, they have had the authority to impose one since 1969. Here, just as in Wallace, “[ajppellants have not identified any secular purpose that was not fully served by [existing state law] before the enactment of [the statute in question].” Wallace v. Jaffree, 472 U.S. 38, 59, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985); see also Edwards, 482 U.S. at 587-88, 107 S.Ct. 2573.
If legislators truly wanted to mandate a meditative, calming period of silence for students, all they had to do was model the Act after Georgia’s period-of-silence statute, O.C.G.A. § 20-2-1050. The Georgia law is nearly identical to the statute here, except that it does not refer to prayer. Compare O.C.G.A. § 20-2-1050(b) (period “shall be considered as an opportunity for a moment of silent reflection on the anticipated activities of the day”) with 105 ILCS 20/1 (period “shall be an opportunity for silent prayer or for silent reflection on the anticipated activities of the day”) (emphasis added). The Eleventh Circuit upheld the Georgia statute in Bown v. Gwinnett County School Dist., 112 F.3d 1464, 1469-72 (11th Cir.1997), finding it had a valid secular purpose and that it did not convey a message of endorsement of religion. It is fair to assume that the drafters of the recent amendment to the Act were aware of statutes like Georgia’s. The fact that they chose not to follow the Georgia model is revealing.
My colleagues correctly point out that the Illinois drafters were just as likely aware of a number of other states’ period-of-silence laws that do mention prayer. (Op. at 511 n. 4). But the difference between every statute the majority lists and the Georgia statute is that Georgia’s has survived a post-Wallace First Amendment challenge in a federal court of appeals. So if the legislators really did intend to simply mandate a period of silence for secular purposes, one might think that when amending the Act they would have modeled it after a statute they could be confident was appropriately doing just that. See County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 618 n. 67, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (availability of secular alternative is “obvious factor” in deciding whether government’s choice constitutes an endorsement of religion).
The majority believes that the mention of prayer in the Act is warranted to “negate any impression” students may have that prayer is not permitted, an impression that might come from the clause that says the period “shall not be conducted as a religious exercise.” (Op. at 515-16). That *523 argument might be more persuasive if Section 1 was the only part of the Act. But immediately following that clause, the Act goes on to say this:
Student prayer. In order that the right of every student to the free exercise of religion is guaranteed within the public schools and that each student has the freedom to not be subject to pressure from the State either to engage in or to refrain from religious observation on public school grounds, students in the public schools may voluntarily engage in individually initiated, non-disruptive prayer that, consistent with the Free Exercise and Establishment Clauses of the United States and Illinois Constitutions, is not sponsored, promoted, or endorsed in any manner by the school or any school employee.
105 ILCS 20/5. I have difficulty with the idea that any reasonable person, reading the above (in, remember, a law called the “Silent Reflection and Student Prayer Act”), could come away with even the slightest impression that prayer might not be a permissible activity during the period of silence. In light of Section 5, there is simply no negative inference about prayer that needs to be rebutted.
The majority claims that Section 5 is unrelated to Section 1. (Op. at 512-13). But in interpreting a statute, we look not only to the specific statutory language at issue, but to “the language and design of the statute as a whole.” K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988); see also Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 568, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (court’s duty is “to construe statutes, not isolated provisions.”); Square D. Co. and Subsidiaries v. C.I.R., 438 F.3d 739, 745 (7th Cir.2006). Section 5 is thus directly relevant to understanding the purpose of the Act. Nor does Section 5 address an “entirely separate issue” than Section 1. (Op. at 511-12). Section 5 codifies (unnecessarily, I might add) the First Amendment right of students to engage in “individually initiated, non-disruptive prayer.” Isn’t that what “silent prayer” under Section 1 is?
While I question the decision to reference prayer in the Act here, I also recognize that inserting the term does not automatically render every period-of-silence statute unconstitutional. See, e.g., Wallace v. Jaffree, 472 U.S. 38, 76, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (O’Connor, J., concurring) (“A moment of silence law that is clearly drafted and implemented so as to permit prayer, meditation, and reflection within the prescribed period, without endorsing one alternative over the others, should pass this test.”). Post-Wallace, two of our sister circuits have indeed upheld period-of-silence statutes that directly reference prayer as an option. See Croft v. Governor of Texas, 562 F.3d 735, 750-51 (5th Cir.2009); Brown, 258 F.3d at 282. But the statutes in those cases differ from the Act here in a critical way: they provide “catch-all” alternatives to the prayer option. The Act, in contrast, provides a forced, binary choice between two substantively specific activities — (1) pray; or (2) silently reflect on the anticipated activities of the day — and in so doing, conveys the message that the state of Illinois favors these two activities over a host of other silent options. To the extent that a reference to prayer is permissible in a period-of-silence statute, the Act here still fails to pass muster. See Wallace, 472 U.S. at 73, 105 S.Ct. 2479 (O’Connor, J., concurring) (“The face of [a] statute ... may clearly establish that it seeks to encourage or promote voluntary prayer over other alternatives.”).
In Brown, the Fourth Circuit rejected an Establishment Clause challenge to a *524 Virginia period of silence statute during which a student could “in the exercise of his or her individual choice, meditate, pray, or engage in any other silent activity.” Va.Code Ann. § 22.1-203 (emphasis added). Assessing the language of the statute, the Fourth Circuit noted that “[b]eeause the state imposes no substantive requirement during the silence, it is not religiously coercive.” Brown, 258 F.3d at 281. The court noted with approval the fact that the word “pray” in the Virginia statute was coupled with “an unlimited range of mental activities that are authorized during the minute of silence.” Id. at 281-82 (emphasis added). The Act, in contrast, does impose a substantive requirement during the silence — there are only two specific choices, pray or think about that day’s activities — instead of coupling the prayer option with an unlimited range of other permissible activities.
And in Croft, the Fifth Circuit evaluated a challenge to a Texas period of silence law that also had a catch-all non-prayer option. See 562 F.3d at 738-39. The Texas statute provided for a period during which “each student may, as the student chooses, reflect, pray, meditate, or engage in any other silent activity.” Tex. Educ.Code 25.082(d) (emphasis added). The Fifth Circuit noted with approval the fact that the Texas statute “clearly state[s] that children may pursue ‘any other silent activity’ during the moment of silence. ‘Not praying’ is thus covered by the catchall provision.” 562 F.3d at 749 (emphasis in original, citation omitted). The Croft court also noted that the Texas statute is “facially neutral between religious and non-religious activities.” Id. Again, this is in stark contrast to the Act here. The Act here is not facially neutral between religious and non-religious activities. It specifically highlights prayer as one of two permissible choices, and in so doing elevates it as a preferred activity over many non-religious options.
The majority disagrees with the premise that the Act mandates a binary either/or choice, and instead concludes that it permits “any silent activity.” (Op. at 517). But that simply is not what the Act says. It is a primary rule of statutory interpretation that we give words in a statute then-plain and ordinary meaning. See Ind. Forest Alliance, Inc. v. U.S. Forest Serv., 325 F.3d 851, 857 (7th Cir.2003). The words in the Act are very clear: they say that the period “shall” — a mandatory, not discretionary term, see Robinson Farms Co. v. D'Acquisto, 962 F.2d 680, 684 (7th Cir.1992) — be an opportunity for (1) silent prayer or (2) silent reflection on the anticipated activities of the day. I, like the district court, interpret this language as limiting the permissible choices to those two specific options.
Phrasing the two choices as “opportunities” does not matter. If the Act said that the moment of silence “shall be an opportunity for silently thinking about Shakespeare or for silent reflection on the anticipated activities of the day,” could anyone seriously argue that the Act was not expressing a preference on the part of the State of Illinois that its public school students engage in these two activities over others? Calling the two options “opportunities” does nothing to change the fact that they are being expressly highlighted and endorsed. See Brown, 258 F.3d at 290 (King, J., dissenting) (“I am not comforted by the ... statute’s allowance of ‘choice.’ Simply because the Commonwealth does not explicitly require its public school students to pray does not mean that they are not being subtly coerced to do so.”). Again, why list prayer as an example at all? The answer is because, professed secular goals notwithstanding (at least two of the Act’s supporters actually claimed that *525 the period of silence might lessen bullying and school shootings), the true purpose of statutes such as this one is to promote prayer. See id. at 284 n. 3 (King, J., dissenting) (“any objective observer” should recognize that “the real purpose” of the Virginia statute at issue is endorsement of prayer in public schools); see also Christine Rienstra Kiracofe, “Pretending Not To Pray?: A Historical Overview of Moment of Silence Legislation and Why Illinois’ Statute Clearly Violated the Lemon Test,” 241 Ed. Law. Rep. 1, 16 (2009) (“Although the state of Illinois argued that [the Act] did, in fact, have a secular purpose, the history of the bill and its sponsors seemed to suggest otherwise.”).[1]
The majority quotes statements from some legislators indicating that they intended the period to be a time for “any silent thought.” (Op. at 516-17). But such statements fly directly in the face of what the Act unambiguously says, and it is the words of the statute that control. See DirecTV, Inc. v. Barczewski, 604 F.3d 1004, 1008 (7th Cir.2010) (“Legislative history comes into play only when necessary to decode an ambiguous enactment.”). If the Illinois legislature wanted the range of permissible options to be broader, it certainly possessed the vocabulary to have expressed that. It is not our place to rewrite the statute to say something it does not. The Act says what it says. And even under the alternative reading advanced by the majority' — that the choices are simply nonlimiting examples — isn’t the Act still at least expressing a preference for those enumerated activities? See Santa Fe, 530 U.S. at 316, 120 S.Ct. 2266 (“[T]he simple enactment of this policy, with the purpose and perception of school endorsement of student prayer, was a constitutional violation.”).
The majority further concludes that it would be “unreasonable” to interpret the statute as limiting the choices to prayer or reflection, because teachers cannot possibly know what a student is thinking. (Op. at 517). I agree that there are obvious problems with enforcement of the Act, but questions about implementation do not change what the statute says. Realistically enforceable or not (and I agree with the district court’s conclusion that compliance with the Act will require that teachers explain the two options to students), the Act, on its face, expresses a preference for prayer as one of two specific activities that the state of Illinois wants schoolchildren to engage in, over all others. This is impermissible. See Santa Fe, 530 U.S. at 316, 120 S.Ct. 2266.
There is a “line between creating a quiet moment during which those so inclined may pray, and affirmatively endorsing the particular religious practice of prayer. This line may be a fine one, but our precedents and the principles of religious liberty require that we draw it.” Wallace, 472 U.S. at 84, 105 S.Ct. 2479 (O’Connor, J., concurring). I believe that by referencing prayer unnecessarily, and by making it one of only two specific activities permitted during the period, the Act falls on the wrong side of this line. I would affirm the district court’s ruling that the Act as written violates the Establishment Clause.

. It is also worth noting that while this case was pending before the district court, Illinois lawmakers made efforts to modify the Act through additional legislation. One bill, HB 4180, would have changed the name of the Act to the "Student Silent Reflection Act” and changed the period of silence back from mandatory to optional. Another bill, HB 4186, would have similarly removed the word “prayer” from the Act’s title, and would have removed Section l’s reference to silent prayer. Both bills failed. See Kiracofe at 15.