# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-1455

DAWN S. SHERMAN, a minor, through
ROBERT I. SHERMAN, her father and
next friend, on behalf of herself and
all others similarly situated,

*Plaintiff-Appellee,*

*v.*

DR. CHRISTOPHER KOCH, State
Superintendent of Education,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 6048—**Robert W. Gettleman**, *Judge.*

ARGUED FEBRUARY 10, 2010—DECIDED OCTOBER 15, 2010

Before RIPPLE, MANION, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* In 2007, Illinois amended
Section 1 of the Silent Reflection and Student Prayer Act
making mandatory a period of silence in public schools;

prior to this amendment, teachers had the option of observing a period of silence at the beginning of the school day. After the Illinois legislature amended Section 1, Dawn Sherman, through her father, Robert I. Sherman, sued Christopher Koch in his official capacity as Superintendent of the Illinois State Board of Education ("Koch"), and Township High School District 214 ("District 214"), alleging that Section 1 was facially unconstitutional. The district court certified a plaintiff class of all public school students in Illinois, with Sherman as the class representative ("Sherman"), and a defendant class of all public school districts in Illinois, with District 214 as the class representative. The parties filed cross-motions for summary judgment. The district court granted Sherman summary judgment, concluding that Section 1 violated the first and second prongs of the *Lemon* test and thus the Establishment Clause. Specifically, the district court held that Section 1 lacked a secular purpose and that it had the primary effect of advancing or inhibiting religion by favoring religions which engage in silent prayer (over religions which do not). The district court further held that Section 1 was unconstitutionally vague in violation of the Due Process Clause of the Constitution because it did not specify the length of the period of silence, how the period of silence would be implemented, or the penalty for violating the statute. The district court then permanently enjoined the defendants from implementing or enforcing Section 1. Koch appeals.

On appeal, Sherman relies extensively on *Wallace v. Jaffree*, 472 U.S. 38, 56 (1985), wherein the Supreme

Court held that Alabama's moment of silence law lacked any secular purpose and was thus unconstitutional. She likewise points to the Third Circuit decision in *May v. Cooperman*, 780 F.2d 240, 242 (3d Cir. 1985), which held that the New Jersey moment of silence law violated the Establishment Clause. Koch responds that unlike *Wallace* and *May*, where there was no secular purpose justifying the moment of silence laws at issue, Illinois's period of silence law provided the secular purpose of having a uniform moment of quiet reflection to calm school children before they start the day. Thus, Koch claims, Section 1 passes constitutional muster, as do the Georgia, Virginia, and Texas moment of silence laws upheld by the Eleventh, Fourth and Fifth Circuits in *Bown v. Gwinnett County School District*, 112 F.3d 1464 (11th Cir. 1997), *Brown v. Gilmore*, 258 F.3d 265 (4th Cir. 2001), and *Croft v. Governor of Texas*, 562 F.3d 735 (5th Cir. 2009). We agree. Like the statutes at issue in *Bown*, *Brown*, and *Croft*, Section 1 serves a secular purpose and does not have the principal or primary effect of promoting religion. Section 1 also is not unconstitutionally vague. Accordingly, we reverse and remand.

## I.

Since 1969, Illinois has had a statute authorizing a period of silence in public school classrooms. The original statute provided:

> An Act to authorize the observance of a brief period of silence in public school classrooms at the opening of each school day.

Be it enacted by the People of the State of Illinois, represented in the General Assembly:

Section 1. In each public school classroom the teacher in charge may observe a brief period of silence with the participation of all the pupils therein assembled at the opening of every school day. This period shall not be conducted as a religious exercise but shall be an opportunity for silent prayer or for silent reflection on the anticipated activities of the day.

Ill. Rev. Stat. 1969, ch. 122, par. 771.

In 1990, as part of an act that assigned short titles to hundreds of statutes, the law was given the short title, "the Silent Reflection Act." Pub. Act 86-1324, § 933, eff. Sept. 6, 1990. Then, in 2002, the Illinois legislature added a new section to the Act, Section 5, which set forth a student's right to free exercise of religion (and specifically the right to engage in non-disruptive prayer) and his right to be free from pressure from the State to engage in or refrain from religious observance. 105 ILCS 20/5.[1] Simultaneously, the Illinois

---

[1] In full, Section 5 provides: "In order that the right of every student to the free exercise of religion is guaranteed within the public schools and that each student has the freedom to not be subject to pressure from the State either to engage in or to refrain from religious observation on public school grounds, students in the public schools may voluntarily engage in individually initiated, non-disruptive prayer that, consistent

(continued...)

legislature amended the short title of the act to "the Silent Reflection and Student Prayer Act." Pub. Act 92-832, eff. Jan. 1, 2003.

The Silent Reflection and Student Prayer Act remained unchanged until early 2007 when the Illinois legislature passed a bill amending Section 1, making the period of silence mandatory by changing the phrase "may observe" to "shall observe." After this amendment, Section 1 read:

> **Period of silence.** § 1. In each public school classroom the teacher in charge *shall* observe a brief period of silence with the participation of all the pupils therein assembled at the opening of every school day. This period shall not be conducted as a religious exercise but shall be an opportunity for silent prayer or for silent reflection on the anticipated activities of the day.

105 ILCS 20/1 (emphasis added).

Then-Governor Rod Blagojevich vetoed the amendment, but the Illinois legislature overrode the veto and the amendment became effective on October 11, 2007. On October 26, 2007, Dawn Sherman, through her father, sued her high school, District 214, under 42 U.S.C. § 1983, seeking declaratory and injunctive relief that

---

[1] (...continued)
with the Free Exercise and Establishment Clauses of the United States and Illinois Constitutions, is not sponsored, promoted, or endorsed in any manner by the school or any school employee." 105 ILCS 20/5.

Section 1 is facially invalid under the First Amendment. Less than one week later, Sherman filed an amended class action complaint for declaratory and injunctive relief under 42 U.S.C. § 1983 against District 214 and Koch, alleging that Section 1 is facially invalid under the First Amendment because it effects an establishment of religion and under the Fourteenth Amendment because it is unconstitutionally vague.

In November 2007, the district court preliminarily enjoined the defendants from implementing or enforcing Section 1. Sherman then moved for certification of a bilateral class. The district court certified a plaintiff class of all students in public schools in the State of Illinois, represented by Sherman, and a defendant class of all public school districts in the State of Illinois, represented by District 214. The district court then extended the preliminary injunction to all defendant class members.

Sherman, supported by *amicus curiae* the American Civil Liberties Union ("ACLU"), then moved for summary judgment, arguing that Section 1 violates the Establishment Clause because it lacks a secular purpose, endorses prayer and discriminates against religions whose beliefs do not embrace the concept of momentary, silent prayer. Sherman also claimed that Section 1 is unconstitutionally vague because it does not specify how the period of silence will be implemented or the penalties for not complying with the statute.

Koch, supported by *amicus curiae* Alliance Defense Fund ("ADF"), also filed a motion for summary judg-

ment. He argued that Section 1 serves the secular purpose of providing a uniform moment of quiet reflection to calm school children before they start the day. And while acknowledging the law could be misapplied to endorse prayer, Koch asserted that the statute is neutral on its face and offers secular benefits to all students. Koch further argued that the law is not unconstitutionally vague in all its applications, as many school districts had successfully implemented the period of silence.

The district court denied Koch's motion for summary judgment and granted Sherman's motion, concluding that Section 1 violates the Establishment Clause and is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment. Specifically, the district court concluded that Section 1 violates the first prong of the *Lemon* test, *see Lemon v. Kurtzman*, 403 U.S. 602 (1971), because it had no clear secular purpose and the stated purpose was a sham. The district court also concluded that Section 1 violates the second prong of *Lemon* because its primary effect is to advance or inhibit religion. The district court further held that Section 1 was unconstitutionally vague because it "provides no direction as to how the 'period' of silence should be implemented, how long the period should last, and whether pupils would be permitted to pray in a manner that was either audible or required movement." *Sherman v. Township High School Dist. 214*, 594 F.Supp.2d 981, 990 (N.D. Ill. 2009). The district court then permanently enjoined the defendants from implementing or enforcing

Section 1. Koch appeals.[2]

## II.

### A. Standing

Initially we consider Sherman's standing, because if a class representative lacks standing at the time the complaint is filed, the entire class action should be dismissed. *Walters v. Edgar*, 163 F.3d 430, 437 (7th Cir. 1998) ("[T]he present suit was properly dismissed for want of standing, dooming the class action because [the named plaintiffs] lacked standing when they filed the suit . . . ."). To have standing, "a plaintiff must allege (1) that he has suffered an injury in fact (2) that is fairly traceable to the action of the defendant and (3) that will likely be redressed with a favorable decision." *Books v. Elkhart County, Ind.*, 401 F.3d 857, 861 (7th Cir. 2005) (internal quotation and citation omitted).

*Amicus* ADF argues that Sherman lacks standing because she has not suffered an injury. As ADF sees it, Sherman lacks a cognizable injury because she has not

---

[2] On appeal, the ACLU and ADF again filed *amicus curiae* briefs. Additionally, Wallbuilders, Inc., and the attorneys general of seventeen states (Alabama, Florida, Idaho, Indiana, Louisiana, Mississippi, Nevada, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, Texas, Utah, Virginia, and Washington) filed *amicus curiae* briefs in support of Koch. We thank these parties for their helpful contributions to the court.

suffered direct and unwelcome exposure to religious exercises, practices, or words—rather, Section 1 only "subjects Plaintiff to brief silence." The Fifth Circuit rejected this same argument in *Croft*, 562 F.3d 735. *See infra* at 25-26. There, the plaintiff had challenged Texas's moment of silence law and ADF, who also appeared as an *amicus* in that case, argued that Croft lacked standing because a moment of silence did not injure the plaintiff. *Croft*, 562 F.3d at 745. The Fifth Circuit rejected that argument, noting that "that is a question to be determined on the merits, which must come after determining whether we have jurisdiction to hear the case." *Id.* at 746. The court further held that the Crofts had standing because "their children are enrolled in Texas public schools and are required to observe the moment of silence daily." *Id.*

Similarly, in this case, Sherman is a student at a public school in Illinois and under Section 1 is subject to a mandatory period of silence. Sherman alleges that Section 1's period of silence exposes her to a religious practice in violation of the Establishment Clause. Whether that is true is a question of the merits of her claim, not of her standing to bring the claim; her status as a student establishes her standing to sue. *Id.*

## B.  Establishment Clause

Turning, then, to the merits: Sherman first argues that Section 1 violates the First Amendment. The First Amendment provides, in relevant part, that "Congress

shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . . ." U.S. Const. amend. I. The Supreme Court has held that the Fourteenth Amendment imposes the substantive limitations of the Establishment Clause on the legislative power of the States and their political subdivisions. *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301 (2000). The Supreme Court has further held in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), that to be constitutional: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." *Id.* at 612-13 (internal quotations and citations omitted). We consider each prong of the *Lemon* test in turn.

## 1.  Secular Purpose

Under *Lemon*, the first question is whether the law at issue has a secular legislative purpose. *Lemon*, 403 U.S. at 613. A statute may be motivated in part by a religious purpose and nonetheless satisfy the first criterion of *Lemon*. *Wallace v. Jaffree*, 472 U.S. 38, 56 (1985). Thus, "a secular purpose need not be the exclusive one; it [is] sufficient if the government had '*a* secular purpose.'" *Bridenbaugh v. O'Bannon*, 185 F.3d 796, 800 (7th Cir. 1999) (emphasis added). As we explained in *Metzl v. Leininger*, 57 F.3d 618, 620 (7th Cir. 1995), "[a] law that promotes religion may nevertheless be upheld . . . because of the secular purposes that law also serves." Finally, we note

that the Supreme Court has recognized that the pur-
pose prong of *Lemon* has rarely been determinative
"because [the] government does not generally act uncon-
stitutionally, with the predominant purpose of advancing
religion." *McCreary County, Ky. v. American Civil Liberties
Union of Ky.*, 545 U.S. 844, 859, 863 (2005). And in those
rare cases where the Court has invalidated a statute
because of an illegitimate purpose, "openly available
data supported a commonsense conclusion that a
religious objective *permeated* the government's action."
*Id.* at 863.

In this case, Koch asserts that Section 1 serves the
secular purpose of providing a moment of silence at the
beginning of each school day to calm students and ready
them for the school day. Sherman concedes that quieting
pupils down at the beginning of the school day serves
a valid pedagogical purpose. However, Sherman con-
tends that Illinois's stated secular purpose is not sin-
cere—that it is a sham—and that the real purpose is
to promote prayer.

This court recognized in *Indiana Civil Liberties Union
v. O'Bannon*, 259 F.3d 766, 771 (7th Cir. 2001), that we
generally defer to the government's articulation of a
secular purpose unless it is a sham. In assessing whether
a law has a secular purpose or the purpose is a sham,
we look to the "plain meaning of the statute's words,
enlightened by their context and the contemporaneous
legislative history [and] the historical context of the
statute, . . . and the specific sequence of events leading
to [its] passage." *McCreary*, 545 U.S. at 862 (internal quota-
tion marks omitted).

*a. Wallace v. Jaffree*, 472 U.S. 38, 56 (1985)

Sherman argues that the language of Section 1 (i.e., that the period of silence "shall be an opportunity for silent prayer or for silent reflection on the anticipated activities of the day"), 105 ILCS 20/1, coupled with Section 1's legislative history and historical context, demonstrates that the asserted secular purpose is a sham. In support of her position, Sherman relies heavily on the Supreme Court's opinion in *Wallace*, 472 U.S. 38, in which the Court considered the constitutionality of Alabama's moment of silence law, which provided: "At the commencement of the first class of each day in all grades in all public schools the teacher in charge of the room in which each class is held may announce that a period of silence not to exceed one minute in duration shall be observed for meditation or voluntary prayer, and during any such period no other activities shall be engaged in." *Id.* at 40 n.2 (quoting Alabama Code § 16-1-20.1). The Court held that Alabama's moment of silence law lacked any secular purpose. *Id.* at 59-60. However, while striking the Alabama statute in *Wallace*, the Supreme Court recognized that "[t]he legislative intent to return prayer to the public schools is, of course, quite different from merely protecting every student's right to engage in voluntary prayer during an appropriate moment of silence during the school day." *See Wallace*, 472 U.S. at 59.

This case is significantly different than *Wallace*. In *Wallace* there was no evidence of a secular purpose; rather, the asserted legislative purpose was to return

prayer to public schools. The sponsor of the moment of silence law in that case "inserted into the legislative record—apparently without dissent—a statement indicating that the legislation was an 'effort to return voluntary prayer' to the public schools." *Id.* at 56-57. The bill's sponsor later confirmed this purpose in court proceedings, testifying that he was the "prime sponsor" of the bill and that the bill was an "effort to return voluntary prayer to our public schools . . . it is a beginning and a step in the right direction." *Id.* at 43. The bill's sponsor also testified that apart from the purpose to return voluntary prayer to public school, he had "no other purpose in mind." *Id.*

*Wallace* also involved a suspect historical context. The statute challenged in *Wallace* was passed in 1981, even though the state legislature had just recently (1978) authorized a one-minute period of silence in all public schools "for meditation." *Id.* at 40. Then in 1982, the state legislature enacted another provision authorizing teachers to lead "willing students" in a prescribed prayer to "Almighty God . . . the Creator and Supreme Judge of the world." *Id.* That historical context confirmed the sponsor's testimony that the moment of silence law was just "a beginning and a step in the right direction" to the "effort to return voluntary prayer to our public schools." *Id.* at 43.

Conversely in this case, the State has offered a secular purpose for Section 1—establishing a period of silence for all school children in Illinois to calm the students and prepare them for a day of learning. The

plain language of the statute supports this secular purpose by establishing a mandatory moment of silence: "In each public school classroom the teacher in charge shall observe a brief period of silence with the participation of all the pupils therein assembled at the opening of every school day." 105 ILCS 20/1. And emphatically Section 1 declares: "This period shall not be conducted as a religious exercise . . . ." *Id.* Thus, the plain language disavows any religious purpose in Section 1.

Rather than exposing a sham, the legislative history confirms the secular purpose of Section 1. Specifically, the Senate sponsor, Senator Lightford, explained that, under the 1969 version of the law some teachers were observing a period of silence, but others—often in the same school—were not. S. Proceedings, 95th Ill. Gen. Assem., March 21, 2007, at 88. Lightford explained that her intent in amending the law was to "create uniformity across the State in all of our schools," so that all public school students would be given the same opportunity for "meditation, moment of silence, reflection." *Id.* She further emphasized that the moment "should not be conducted as a religious exercise," but rather was "a neutral act which affords students the opportunity to reflect on whatever they wish, whether religious or not." *Id.* at 86. During debate on the bill, other members of the House and Senate expressed support for a mandatory moment of silence to quiet students and to "instill a little meditative exercise" at the beginning of the day. *Id.* at 87, 88 (statements of Sens. Cronin & Sieben); *see also id.* at 89 (statements of Sen. Meeks); H.R. Proceedings, 95th Ill. Gen. Assem., May 31, 2007, at 63-64.

And throughout the debates no one in either the House or Senate spoke of using the period of silence as a mechanism to return prayer to the schools.

After the Governor vetoed the bill, the Senate and House debated the propriety of overriding the veto. During these debates, those supporting the bill again spoke of the need for a mandatory moment of silence to calm students at the beginning of the school day. S. Proceedings, 95th Ill. Gen. Assem., Oct. 3, 2007, at 11; H.R. Proceedings, 95th Ill. Gen. Assem., Oct. 11, 2007, at 95, 99. The Senate sponsor also reiterated that the period of silence was not to be conducted as a religious exercise. S. Proceedings, 95th Ill. Gen. Assem., Oct. 3, 2007, at 11. And as with the debate on the original passage of the bill, there were no statements indicating a legislative intent to return prayer to school.

Our dissenting colleague claims any secular purpose is secondary to religious motives, citing statements made during the House debate by *opponents* to the bill, including comments made by one representative who, speaking in support of sustaining Governor Blagojevich's veto, focused on the religious motivation of the constituents who called his office in support of Section 1. (Dissent at 42). The dissent also asserts there are "troubling statements in the record indicating religious motivations on the part of some of the Act's supporters," pointing to a press report and the singing of a parody. (Dissent at 42-43). However, "what is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law." *Board of Education of*

*Westside Community Schools v. Mergens,* 496 U.S. 226, 249 (1990) (plurality opinion). Even less relevant are the motives of opponents to a bill and the varied motives of constituent. Moreover, even assuming motivation was relevant and that a press report could be considered legislative history, Senator Lightford's statement to a newspaper reporter (that the General Assembly opens every day with a prayer and the Pledge of Allegiance, and that "I don't get a choice" and "I don't see why students should have a choice") has no bearing on Section 1. The Illinois legislature may open its sessions with a prayer by the assigned clergy for that day. Some legislators may prefer silence. But Section 1 does not likewise require schools to start the day with a prayer. In fact, Section 1 expressly states that the period of silence "shall *not* be conducted as a religious exercise." 105 ILCS 20/1. Therefore, it is not reasonable to read the press quote as an expression by Senator Lightford of a desire to institute school prayer or as undermining the stated secular purpose of Section 1. *See Mueller v. Allen*, 463 U.S. 388, 394-95 (1983) (stating that the Court is reluctant "to attribute unconstitutional motives to the states, particularly when a plausible secular purpose for the state's program may be discerned from the face of the statute"). Rather, the proposed amendment sought solely to change the "may" to a "shall" in Section 1. Thus the only mandate is for silence. Regarding the Simon and Garfunkel take-off, neither Sherman nor the ACLU relied on the singing of this parody as evidence that the legislature's stated secular purpose was a sham, and we think rightly so; a few legislators singing a parody does not evidence legislative intent, much less

overcome the clear statements of secular purpose made by the legislature during debate.

In short, then, the debate of the initial bill and the veto override overwhelmingly supports Illinois's stated secular purpose and provides a stark contrast to the *Wallace* case. In *Wallace*, the bill's sponsor inserted into the legislative history a statement that the legislation was an "effort to return voluntary prayer" to the public schools. And the bill's sponsor, during testimony at the preliminary injunction stage, confirmed that was the *sole* purpose of the statute. In contrast, here, the floor debates confirm the asserted secular purpose.[3]

---

[3] The Fifth Circuit noted in *Croft*, 562 F.3d at 748, n.7 that "[w]here, as here, a valid secular purpose can be gleaned from the text of the [moment of silence] statute at issue, we are not convinced of the wisdom of reviewing legislative history, an arduous and potentially risky task." In *Croft*, though, because the history supported the textual purpose, the court found it "unnecessary to belabor the point." *Id.* We agree that reliance on legislative history to determine whether a secular purpose is genuine or a sham is questionable, given that "what is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law." *Mergens*, 496 U.S. at 249 (plurality opinion). *Wallace*, of course, did look to the legislative history behind Alabama's moment of silence law, not to second-guess an asserted secular purpose, but rather because the *only* legislative purpose in that case was to return prayer to public schools. Like the Fifth Circuit, though, we need not belabor the point because the legislative history supports the state's asserted secular purpose.

Sherman also claims that the historical context demonstrates that Section 1's secular purpose is a sham, again relying on *Wallace*. The historical context underlying Section 1, however, differs significantly from that facing the Court in *Wallace*. In *Wallace*, the historical context made clear that Alabama was attempting to reintroduce school prayer in a stepped approach: first by establishing a moment of silence in 1978, then in 1981 by adding prayer to the statute, and finally, the following year, by authorizing teachers to lead a prayer at the beginning of the school day. Conversely, in this case, the Illinois legislature adopted a period of silence in 1969 and the only change to that law came with the 2007 amendment making the period of silence mandatory.[4] This timing contrasts sharply with *Wallace*'s tightly choreographed historical context which moved Alabama in four short years from a moment of silence to a moment of teacher-led prayer.

---

[4] The dissent believes Illinois's "decision to make the Act mandatory represents an effort to introduce religion into Illinois public schools. . . ." (Dissent at 41-42). But making the moment of silence mandatory (by changing the "may" to a "shall"), changed nothing about the nature of Section 1. Section 1 always—since its original passage in 1969—listed silent prayer as a permissible option. And the prayer option is no more an effort to introduce religion into the public schools now that the moment of silence is mandatory than it was in 1969 when Section 1 established a discretionary moment of silence.

### b. Title of Act and Section 5 are Unrelated to Section 1

Sherman attempts to equate the historical context in this case with *Wallace* by pointing to the change in the title of the Act in 2002 from "the Silent Reflection Act" to "the Silent Reflection and Student Prayer Act." She argues that the insertion of the word "prayer" in the name of the Act confirms that the Illinois legislature sought to promote religion. This argument completely ignores the fact that the title of the Act was changed in 2002 when the Illinois legislature passed an entirely separate law—Section 5—which addressed students' right to pray *and* be free from state-sponsored prayer in schools. Thus, the addition of "and Student Prayer Act" to the title merely updates the Act's title based on the addition of a new section to the law.

Sherman and the ACLU also argue that the addition of Section 5 itself is evidence of the Illinois legislature's desire to promote religion. They further assert that there was no need for Illinois to pass a law allowing school prayer because nothing prohibited the students from praying. There are several flaws in this argument. First and foremost, Sherman did not challenge the constitutionality of Section 5. And even if she had, we see nothing improper with the government attempting to summarize constitutional protections in a statute. The timing of Section 5 indicates that this is exactly what the Illinois legislature had in mind as Section 5 was adopted shortly after the Supreme Court issued its decision in *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000). In *Santa Fe*, the Supreme Court held that

student-led, student-initiated prayer before a football game violated the Establishment Clause, but the Court also stressed that "nothing in the Constitution as interpreted by this Court prohibits any public school student from voluntarily praying at any time before, during, or after the schoolday." *Id.* at 313. Second, while Sherman and the ACLU portray Section 5 as promoting religion, it does no such thing. Rather, Section 5 sets forth in a balanced way the rights of students to both pray and to be free from government-mandated prayer. Specifically, Section 5 addresses students' rights under *both* the Free Exercise Clause and the Establishment Clause and their rights to "free exercise of religion" and "freedom to not be subject to pressure from the State either to engage in or to refrain from religious observation on public school grounds . . . ." 105 ILCS 20/5. Third, Section 5 in no way addresses or relates to the period of silence governed by Section 1. Section 1 established a period of silence and addressed the prohibition on the use of the period of silence as a religious exercise, as well as the students' right to pray during the period of silence, if they chose. In Section 5, the Illinois legislature was addressing an entirely separate issue—the students' right to pray at other times during the school day, as well as their right not to be subject to state-imposed prayer. There is nothing in the text or legislative history of Section 5 which indicates that the Illinois legislature intended to amend or otherwise affect the period of silence when it passed Section 5. In fact, Section 5 was added by the legislature in 2002—three decades after the original passage of Section 1—and during the legisla-

tive debate of Section 5, there was no mention of the period of silence law established by Section 1. In short, Section 5 is unrelated and separate from the question of the constitutionality of Section 1.

### *c. Wallace Concurrences*

As explained above, this case is entirely different from the situation facing the Court in *Wallace*. Moreover, the facts in this case mirror the scenarios presented by Justices O'Connor and Powell in separate concurrences of moment of silence laws which would pass constitutional muster. We find these concurrences persuasive. In their concurrences, both Justice O'Connor and Justice Powell first stressed the unique facts presented in *Wallace*—and the utter lack of any secular purpose behind Alabama's moment of silence law. *See Wallace*, 472 U.S. at 67 (O'Connor, J., concurring) (stating that she was "writ[ing] separately to identify the peculiar features of the Alabama law that render it invalid . . ."); *id.* at 66 (Powell, J., concurring) (stating that he "would vote to uphold the Alabama statute if it also had a clear secular purpose[,] [but that] [n]othing in the record before us, however, identifies a clear secular purpose, and the State also has failed to identify any nonreligious reason for the statute's enactment"). Both justices then stressed that, contrary to the law at issue in *Wallace*, moment of silence laws of many states would satisfy the Establishment Clause. *Wallace*, 472 U.S. at 67 (O'Connor, J., concurring); *id.* at 62 (Powell, J., concurring). Justice O'Connor elaborated on this point,

explaining that "[a] moment of silence law that is clearly drafted and implemented so as to permit prayer, meditation, and reflection within the prescribed period, without endorsing one alternative over the others, should pass" constitutional muster. She added that "[e]ven if a statute specifies that a student may choose to pray silently during a quiet moment, the State has not thereby encouraged prayer over other specified alternatives." *Wallace*, 472 U.S. at 73 (O'Connor, J., concurring). Justice O'Connor further stressed the need for courts to defer to the legislature's stated purpose: Where "a legislature expresses a plausible secular purpose for a moment of silence statute in either the text or the legislative history, or [where] the statute disclaims an intent to encourage prayer over alternatives during a moment of silence, . . . courts should generally defer to that stated intent." *Id.* at 74-75 (O'Connor, J., concurring).

This case fits the scenarios Justices Powell and O'Connor foresaw.[5] In this case, Section 1 identified a

---

[5] Justice Brennan had also envisioned constitutional moment of silence laws years earlier in his concurrence in *School District of Abington Township v. Schempp*, 374 U.S. 203, 281 (1963). In *Schempp*, the Supreme Court invalidated laws requiring public schools to open each school day with a recitation of either the Lord's prayer or a reading from the Bible. In his concurring opinion, Justice Brennan suggested that "the observance of a moment of reverent silence at the opening of class" may serve "solely secular purposes . . . without jeopardizing either the religious liberties of any members

(continued...)

clearly secular purpose of establishing a period of silence, and nothing in the record indicates that the statute was motivated, even in part, by a religious purpose (although a law need not be premised solely on secular purposes). Moreover, Section 1 "disclaims an intent to encourage prayer over alternatives during a moment of silence," *id.*, by stating that the period of silence "shall not be used as a religious exercise." 105 ILCS 20/1. In short, Section 1 provides a fitting illustration of a moment of silence law which protects "every student's right to engage in voluntary prayer during an appropriate moment of silence during the school day." *Wallace*, 472 U.S. at 59

### d. Sister Circuits

Subsequent to *Wallace*, four other circuits have considered the constitutionality of moment of silence laws. First, the Third Circuit in *May*, 780 F.2d 240, held that New Jersey's moment of silence law violated the Establishment Clause. *May* involved a situation, like *Wallace*, in which there was no secular purpose justifying the moment of silence law. Specifically, in *May* the Third Circuit held that the district court's conclusion that the legislature lacked any secular pur-

---

[5] (...continued)

of the community or the proper degree of separation between the spheres of religion and government." *Id.* (Brennan, J., concurring).

pose for adopting the moment of silence was not clearly erroneous. *Id.* at 252-53. The *May* court, though, expressly recognized that a moment of silence law enacted with a secular purpose would be constitutional. *Id.* at 251-52.

The Eleventh Circuit next considered the constitutionality of a moment of silence law in *Bown*, 112 F.3d 1464. At issue in *Bown* was Georgia's moment of silence law which required every teacher to open the school day with a "brief period of quiet reflection for not more than 60 seconds." *Id.* at 1466 (quoting O.C.G.A. § 20-2-1050(a)). The statute further stated that the moment of quiet reflection "is not intended to be and shall not be conducted as a religious service or exercise but shall be considered as an opportunity for a moment of silent reflection on the anticipated activities of the day." *Bown*, 112 F.3d at 1466 (quoting O.C.G.A. § 20-2-1050(b)). Prior to amendment, Georgia's moment of silence law provided for a discretionary moment of silence for "silent prayer or meditation." *Id.* at 1470 n.3.

The Eleventh Circuit applied the *Lemon* test and first considered whether the law served a valid secular purpose. The court concluded that both the preamble and the statutory language provided a secular purpose and added that "[b]y stating that the moment of quiet reflection shall not be conducted as a religious service or exercise, the statute indicates that Georgia is not advocating the moment of quiet reflection as a time for religious activity." *Id.* at 1469-70. The court also reviewed the legislative history in detail and noted that some

Georgia legislators had expressed religious motives for voting for the Act. *Id.* at 1472. The Eleventh Circuit, however, concluded that "[t]he Act's legislative history, although somewhat conflicting, is not inconsistent with the express statutory language articulating a clear secular purpose and disclaiming a religious purpose. . . . We are thus faced with legislative history that is much different from that in [*Wallace*]." *Id.* at 1471.

The Fourth Circuit was the next circuit to consider the constitutionality of a moment of silence law. In *Brown*, 258 F.3d 265, the court upheld Virginia's moment of silence law, which required schools to observe a moment of silence during which students could "meditate, pray, or engage in any other silent activity . . . ." *Id.* at 270 (citing Va. Code Ann. § 22.1-203). The Fourth Circuit concluded that the statute's text supported two secular purposes: to promote non-religious meditation and to accommodate religion. *Id.* at 276. The *Brown* court concluded that a "statute having dual legitimate purposes—one clearly secular and one the accommodation of religion—cannot run afoul of the first *Lemon* prong." *Id.* at 277.

Finally, in *Croft*, 562 F.3d 735, the Fifth Circuit upheld Texas's 2003 moment of silence law that required school districts to observe one minute of silence during which "each student may, as the student chooses, reflect, pray, meditate, or engage in any other silent activity that is not likely to interfere with or distract another student." *Id.* at 738 (quoting Tex. Educ. Code § 25.082). The 2003 moment of silence law challenged in *Croft* had

amended Texas's 1995 moment of silence law. Among other things, the amendment made the moment of silence mandatory and added the word "pray" to the list of options, as well as adding the catch-all "or engage in any other silent activity that is not likely to interfere with or distract another student." *Id.* at 738-39. In addition to the moment of silence law, Texas also had another statutory provision addressing the broader First Amendment rights of students, similar to Illinois's Section 5. *Croft*, 562 F.3d at 738 (quoting Tex. Educ. Code § 25.901).

The Fifth Circuit held that Texas's moment of silence law had a valid secular purpose based on both the statutory language and the legislative history. *Croft*, 562 F.3d at 746-49. After reviewing the legislative history in detail, the court concluded that on the whole, the legislative history suggested there were several reasons for amending Texas's moment of silence law, "including the return to prayer but also purely secular ones such as a reflective moment . . . . " *Id.* The *Croft* court added that "[e]ven if some legislators had religious motives in promoting this legislation, there are clear secular legislative purposes present." *Id.* The court then stressed that the Supreme Court in *Wallace* noted that "even though a statute is 'motivated in part by a religious purpose' it may still satisfy the *Lemon* test." *Id.* (quoting *Wallace*, 472 U.S. at 56). Thus, the court upheld Texas's moment of silence law and distinguished it from *Wallace* and *May*, where there were no secular purposes at all. *Croft*, 562 F.3d at 748-49.

This case is more in line with *Croft, Brown*, and *Bown* than *May*. In *Croft, Brown*, and *Bown* the text of the moment of silence laws at issue demonstrated a clear secular purpose, and the legislative history supported the asserted secular purpose. Moreover, Section 1, like the statute at issue in *Bown*, clearly stated that the period of silence shall not be used as a religious exercise. *Bown*, 112 F.3d at 1466 (quoting O.C.G.A. § 20-2-1050(b)). Where "a legislature expresses a plausible secular purpose for a moment of silence statute in either the text or the legislative history, or [where] the statute disclaims an intent to encourage prayer over alternatives during a moment of silence, . . . courts should generally defer to that stated intent." *Wallace*, 472 U.S. at 74-75 (O'Connor, J., concurring).

In fact, in many ways, this case presents an even more compelling case than *Croft, Brown*, and *Bown*. In those cases, there was evidence that the goal of at least some legislators was the return of prayer to school. *Croft*, 562 F.3d at 738-39 (acknowledging that "there were references by some legislators to returning prayer to schools"); *Brown*, 258 F.3d at 271 (noting that the Senate sponsor "when asked by a newspaper reporter about his intent in sponsoring the bill . . . responded that his intent was not to force prayer in schools, but he added, '[t]his country was based on belief in God, and maybe we need to look at that again'"); *Bown*, 112 F.3d at 1471 (noting that some legislators "indicated a desire to reinstitute school prayer"). There is no similar legislative history to either the original passage of Section 1 or its recent amendment; rather, the legislative history to

Section 1 indicates a solely secular purpose. Moreover, Illinois's amendment to Section 1 did not add "pray" to the list of permissible options, as the legislature in *Croft* had done; rather, "prayer" has been included in Section 1 since its original passage in 1969. And unlike this case, the statutes at issue in both *Croft* and *Brown* did not specify that the moment of silence "shall not be conducted as a religious exercise." *Croft*, 562 F.3d at 738; *Brown*, 258 F.3d at 271 n.1. Because Section 1 does contain this prohibition, the constitutionality of the Illinois statute is even more compelling.

### 1) *"Prayer" Option*

In response, Sherman argues that *Bown* is distinguishable because, unlike Section 1, the Georgia legislature in *Bown* had removed the word "prayer" from the state's moment of silence law and the Eleventh Circuit noted that this deletion "provides some support for the idea that the Act's purpose is secular." *Id.* at 1470 n.3. She further claims that *Brown* and *Croft* were wrongly decided because the moment of silence statutes in those cases mentioned prayer; in her view, a moment of silence law will only pass constitutional muster if it does not mention "prayer."

It is true that when the Georgia legislature amended the statute at issue to make the moment of silence mandatory, it simultaneously removed the word "prayer"

from the statute.[6] But the Eleventh Circuit in *Bown* merely found that deletion supported the government's secular purpose—it did not hold that a moment of silence law would fail the *Lemon* test if the law included prayer as a permissible activity. And we find nothing wrong with Illinois's (or Virginia's or Texas's) legislature informing teachers and students alike that students may pray during the period of silence, given that the statutory language does not indicate any preference for prayer over silent reflection. In fact, listing prayer as a permissible option makes eminent sense in this case, given that Section 1 expressly states that the period of silence "shall not be used as a religious exercise." 105 ILCS 2011. As Koch explained, it was important to note that prayer is a permissible option to negate any impression that teachers or students may have that students were not allowed to pray (silently) during the period of

---

[6] The dissent asserts that it is telling that the drafters of the amendment to Section 1, while aware of Georgia's statute, chose not to follow the Georgia legislature's approach. But the Illinois drafters were just as likely aware of the moment of silence laws in Florida, Kansas, Louisiana, Nevada, North Dakota, Ohio, Pennsylvania, and West Virginia, which like Section 1, provided as illustrations of permissible activities only prayer and meditation (and/or contemplation or reflection.) *See, e.g.*, Fla. Stat. § 1003.45; Kans. Stat. § 72-5308a; La. Stat., Tit. 17, Ch. 10, Part II, Subpart B, § 2115; Nev. Rev. Stat. § 388.075; N.D. Cent. Code, § 15.1-19-03.1; Ohio Rev. Code, § 3313.601; Penn. Stat., Tit. 24, Ch. 1, § 15-1516.1; W.Va. Const., Art. III, § 15a. We do not find it unusual that states differ in the language they use to achieve the same secular purpose.

silence.[7] And deleting prayer from Section 1—after it had been part of that statute for nearly forty years—could actually evidence a hostility to religion which is itself unconstitutional. *Brown*, 258 F.3d at 281-82 (finding that striking down a moment of silence statute solely because "pray" was used "would manifest a hostility to religion that is plainly inconsistent with the religious liberties secured by the Constitution"). Therefore, contrary to Sherman's argument, we conclude that a moment of silence law can constitutionally include a "prayer" option in accord with the holdings in *Brown* and *Croft*. *See Wallace*, 472 U.S. at 73 (O'Connor, J., concurring) ("Even if a statute specifies that a student may choose to pray silently during a quiet moment, the State has not thereby encouraged prayer over other specified alternatives.").

### 2) *Catch-all Clause*

Alternatively, Sherman argues that even if *Brown* and *Croft* were correctly decided, this case is distinguishable because the statutes at issue in those cases included the catch-all phrase "any other silent activity." *Brown*, 258 F.3d at 270 (quoting Va. Code Ann. § 22.1-203); *Croft*,

---

[7] The dissent has difficulty believing that a reasonable person could interpret Section 1 as barring prayer during the moment of silence given the existence of Section 5. (Dissent at 45). But when Section 1 was first adopted in 1969, Section 5 did not exist. And, as explained above, *see supra* at 19-21, Section 5 is unrelated to Section 1 and addresses an entirely separate issue than the moment of silence established by Section 1.

562 F.3d at 738 (quoting Tex. Educ. Code. § 25.082(d)). Sherman claims that in contrast, Section 1 limits pupils to only two activities—prayer or reflection on the day's activities. Sherman and the ACLU, however, misread Section 1. Nothing in the text of Section 1 limits students' thoughts during the period of silence; the text mandates only one thing—silence. While Section 1 does state that "[t]his period . . . shall be an opportunity for silent prayer or for silent reflection on the anticipated activities of the day," providing an opportunity is not the same thing as mandating conduct.[8] There is nothing in the statute limiting the use of the period of silence, and the legislative history makes clear that the legislators intended the moment of silence to be available for any silent thought. *See* Statement of Senator Lightford, S. Proceedings, 95th Ill. Gen. Assem., March 21, 2007, at 86, 88 (the moment "should not be conducted as a religious exercise," but rather was "a neutral act which affords

---

[8] The dissent concludes that Section 1 limits permissible choices during the moment of silence to two options (prayer or silent reflection on the anticipated activities of the day), because "[t]he Act says what it says." (Dissent at 50-51). Exactly. Section 1 says that the moment of silence "shall" be "an opportunity" for "prayer or silent reflection on the anticipated activities of the day." The dissent focuses on the "shall" and the "prayer or silent reflection" language, while ignoring the plain and ordinary meaning of the word "opportunity." Opportunities may be accepted—but they may also be rejected, leaving students to their own thoughts, albeit silent ones. The dissent also states that the Act requires teachers to explain the two options to students, (dissent at 51) but there is no such mandate in the language of Section 1.

students the opportunity to reflect on whatever they wish, whether religious or not"); Statements of Senators Cronin and Sieben, *id.* at 87-88 (supporting mandatory moment of silence to "instill a little meditative exercise" at the beginning of the day, however students may choose to use it). Moreover, it would be unreasonable to interpret the statute as limiting students' thoughts to prayer or reflection as there is no way a teacher could know what a student is pondering, and we will not interpret a law in an absurd way. *Zbaraz v. Madigan*, 572 F.3d 370, 386-87 (7th Cir. 2009). Thus, while the text of Section 1 differs from the statutes at issue in Virginia and Texas, Section 1, like those statutes, permits any silent activity. *See also Bown*, 112 F.3d at 1472-73 (noting that Georgia's moment of silence statute, which provided that it "shall be considered as an opportunity for a moment of silent reflection on the anticipated activities of the day," allowed students to "use the moment of quiet reflection as they wish, so long as they remain silent"). Accordingly, we reject Sherman's argument that Section 1 is unconstitutional because it lacks a catch-all clause.

### 2. Primary Effect

The second prong of *Lemon* considers whether the government's practice has the principal or primary effect of advancing or inhibiting religion. *Lemon,* 403 U.S. at 613. Under this prong, the question is: "irrespective of government's actual purpose, whether the practice under review in fact conveys a message of endorsement or disapproval." *Freedom from Religion Foundation, Inc. v.*

*City of Marshfield, Wis.*, 203 F.3d 487, 493 (7th Cir. 2000)
(internal quotation omitted). The ACLU argues that
Section 1 has the principal or primary effect of advancing
religion by limiting students' thoughts during the period
of silence to one of two topics (prayer or reflection on
the day's activity), making prayer an attractive alterna-
tive. However, as explained above, *see supra* at 30-32,
Section 1 does not limit students' thoughts during the
moment of silence and thus this argument fails. Of course,
should a school (or an individual teacher) implement
Section 1 in a way which encourages (or discourages)
prayer, that would be another case. But in this case
Sherman presents solely a facial challenge and facially
the statute only mandates a period of silence and con-
veys neither a message of endorsement nor disapproval.
Justice O'Connor in her concurrence in *Wallace* put it
best when she said: "It is difficult to discern a serious
threat to religious liberty from a room of silent, thoughtful
schoolchildren." *Wallace*, 472 U.S. at 73 (O'Connor, J.,
concurring). In fact, the plain language of Section 1 shows
that Illinois acted with neutrality—avoiding both endorse-
ment (by stating that the period of silence shall not be
conducted as a religious exercise) and disapproval (by
stating that the period of silence shall be an opportunity
for prayer or silent reflection).

The decisions from our sister circuits support
this conclusion.[9] In *Bown*, the Eleventh Circuit held that

---

[9] The Supreme Court in *Wallace* did not address the second
and third prongs of the *Lemon* test, having concluded that
(continued...)

Georgia's moment of silence law satisfied *Lemon*'s second prong because the law merely required students to remain silent and "explicitly says that the moment of quiet reflection is not to be conducted as a religious exercise." *Bown*, 112 F.3d at 1473. And there was no suggestion "that students should or should not pray silently during the moment of quiet reflection." *Id.* Similarly, in *Brown*, the Fourth Circuit held that the second prong of *Lemon* was clearly satisfied because the statute was facially neutral "between religious and nonreligious modes of introspection and other silent activity." *Brown*, 258 F.3d at 277. Further, *Brown* rejected the plaintiff's argument that "despite the statute's facial neutrality between silent religious expression and silent nonreligious expression, the statute's inevitable effect . . . will be to promote prayer by creating the perception, especially from the viewpoint of young, impressionable school children, that the Commonwealth endorses prayer." *Brown*, 258 F.3d at 277-78. The court reasoned that "[i]n the context of a facial challenge, however, this fear is speculative at best . . . ." *Brown*, 258 F.3d at 278. The *Brown* court concluded that "speculative fears as to the potential effects of this statute [on school children] cannot be used to strike down a statute that on its face is neutral between religious and nonreligious activity." *Id. Croft* likewise held that the moment of silence law did not "have the primary effect of advancing religion, and so survives the second *Lemon* prong." 562 F.3d at

[9] (...continued)
the moment of silence law in that case lacked any secular purpose.

749. Even *May*, which held New Jersey's moment of silence law unconstitutional, held that the statute did not have the primary effect of advancing or inhibiting religion. *May*, 780 F.2d at 247-50.

Alternatively, Sherman argues that Section 1 violates the second prong of *Lemon* by favoring some religions (those which engage in silent prayer) over other religions (those which do not). Attorneys General *amici* urge us to reject this argument because this reasoning would render unconstitutional the moment of silence laws of more than thirty states because, by their nature, moment of silence laws will always preclude vocal prayer.

We agree with Koch and the Attorneys General *amici*: A moment of silence law does not violate the Establishment Clause by favoring some religions. The government may not favor "one religion over another without a legitimate secular reason." *Nelson v. Miller*, 570 F.3d 868, 881 (7th Cir. 2009). In this case, to the extent it could be considering "favoring" some religions by providing a period of silence, there is a valid secular reason for not allowing vocal prayer during that time—maintaining *silence*. Therefore, Section 1 neither advances nor inhibits any particular religion in violation of *Lemon*'s second prong.

Our sister circuits have reached the same conclusion on this issue as well. For instance, in *Bown*, the plaintiff argued that "the Act, by mandating a moment of silence, both advances and inhibits religion by favoring silent prayer and discouraging other forms of prayer." *Bown*,

112 F.3d at 1472. The Eleventh Circuit rejected this argument stressing "[t]he Act mandates a moment of *quiet reflection,* not a moment of silent prayer." *Id.* at 1472. The court then concluded that "so long as the moment of quiet reflection exercise is conducted in the manner prescribed by the statute (i.e., that the moment of quiet reflection is silent and is not conducted as a religious exercise)," the statute does not violate the second prong of *Lemon. Bown*, 112 F.3d at 1473. Similarly, the Fifth Circuit in *Croft* rejected the argument that the moment of silence law discriminates against religions that do not practice silent prayer, explaining the statute "provides for a minute of *silence* and allows any non-disruptive silent activity." *Croft*, 562 F.3d at 750. Requiring that students "be silent does not discriminate among religious sects." *Id.* Thus, Section 1 does not have the primary effect of advancing or inhibiting religion in violation of *Lemon*'s second prong.

### 3.   *Entanglement With Religion*

Under the third prong of the *Lemon* test, a "statute must not foster an excessive government entanglement with religion." *Lemon*, 403 U.S. at 613. This prong is not at issue here because Sherman did not argue, nor did the district court find, that Section 1 fostered an excessive entanglement with religion. *See Books*, 401 F.3d at 858 n.1. ("Books has not argued that the display excessively entangles government with religion, the third inquiry under *Lemon v. Kurtzman,* 403 U.S. 602, 613 (1971), so we do not address that issue."). Nor do we believe that

such an argument would succeed because Section 1 mandates only a period of silence and thus there is no need for schools, teachers, or students to become entangled in questions of religion. Every circuit to have considered this issue has reached a similar conclusion. *See Croft*, 562 F.3d at 750 (stating that "no court has ever accepted—especially on a facial challenge—that a moment of silence statute is excessive government entanglement with religion"); *Brown*, 258 F.3d at 278 ("And the third prong—that the State not become excessively entangled with religion—is undoubtedly satisfied."); *Bown*, 112 F.3d at 1474 ("We conclude that there is no excessive entanglement in this case. All that the Act requires is that the students and the teacher in charge remain silent during the moment of quiet reflection."); *May*, 780 F.2d at 247 (holding that moment of silence statute did not foster an excessive entanglement with religion, but affirming district court's conclusion that statute was unconstitutional because the district court's factual finding that the law lacked a secular purpose was not clearly erroneous). *See also Wallace*, 472 U.S. at 66 (Powell, J., concurring) (stating the "effect of a straightforward moment-of-silence statute [would not] . . . foster an excessive government entanglement with religion").

## C. Vagueness

Finally, Sherman asserts that Section 1 is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment because it does not specify

how the period of silence will be implemented or penalties for violations of the statute. "The void for vagueness doctrine rests on the basic principle of due process that a law is unconstitutional if its prohibitions are not clearly defined." *Karlin v. Foust*, 188 F.3d 446, 458 (7th Cir. 1999) (internal quotation omitted). The Due Process Clause, though, does not demand "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). Rather, a statute is only unconstitutionally vague "if it fails to define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and it fails to establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner." *Fuller ex rel. Fuller v. Decatur Public School Bd. of Educ. Sch. Dist. 61*, 251 F.3d 662, 666 (7th Cir. 2001). However, "the degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). The Constitution tolerates a lesser degree of vagueness in enactments "with criminal rather than civil penalties because the consequences of imprecision are more severe." *Karlin*, 188 F.3d at 458. And "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code." *Fuller*, 251 F.3d at 667 (quoting *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986)). Moreover, in a facial vagueness challenge the

question is whether the statute is vague in all its opera-
tions. *Id.*

While Section 1 does not define the length of the
period of silence, it is not unconstitutionally vague in all
its applications, as demonstrated by District 214's pro-
posed implementation of the statute. At a hearing at
the preliminary injunction stage, District 214 indicated
that it intended to implement Section 1 by making a
school-wide morning announcement: "We will now have
a brief period of silence." Then, after fifteen seconds
had passed, the announcer would begin the Pledge. A
student of ordinary intelligence would clearly under-
stand that he is to remain silent for the fifteen seconds
between the announcement and the beginning of the
Pledge. And given the school setting, the Constitution
does not mandate a cornucopia of additional details or
a statement of the punishment students will face
should they disregard their teacher's direction. Sherman,
therefore, cannot complain of the vagueness of the law
in every situation and her Due Process challenge fails.

III.

The Illinois legislature had a secular purpose in
passing Section 1, namely mandating a period of silence
to calm school children before the start of their day.
There is no evidence that the secular purpose is a sham
and that Illinois's true purpose was to promote prayer.
And there is nothing impermissible about clarifying
that students may pray during that time period. Section 1
also does not advance or inhibit religion (or specific

religions that practice momentary silent prayer), but rather mandates only a period of silence. There is also no state entanglement with religion. Therefore, Section 1 satisfies the *Lemon* test and Sherman's First Amendment challenge fails. Sherman's vagueness challenge also fails because Section 1 is not unconstitutionally vague in all of its operations. For these and the foregoing reasons, we REVERSE and REMAND to the district court with instructions to enter judgment in favor of Koch.

WILLIAMS, *Circuit Judge*, dissenting.    I respectfully dissent. I would affirm the district court's ruling on the basis that the Silent Reflection and Student Prayer Act (the "Act") violates the Establishment Clause of the First Amendment. The Act makes what I believe to be an unnecessary reference to prayer, signaling a predominantly religious purpose to the statute. And by enumerating prayer as one of only two specific permissible activities, the Act conveys a message that Illinois students should engage in prayer during the prescribed period as opposed to a host of other silent options. I have concluded that the purpose and effect of the Act is to encourage prayer in public schools, which violates the first two prongs of the *Lemon* test. *See Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971).

The Act states that the mandatory period of silence:

> [S]hall not be conducted as a religious exercise but shall be an opportunity for silent prayer or for silent reflection on the anticipated activities of the day.

105 ILCS 20/1.

Why mention prayer at all? If the Act truly is meant to achieve the purpose that its sponsors claim it is—mandating a quiet, meditative time at the beginning of each school day for students to settle down and shift into learning mode—why is it necessary to reference prayer? I recognize that the government's stated secular purpose for a law is entitled to "some deference," *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000), but it is also our duty to ensure that the proffered purpose is "genuine, not a sham, and not merely secondary to a religious objective." *McCreary County, Ky. v. American Civil Liberties Union of Ky.*, 545 U.S. 844, 864 (2005). And we are "particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools," because "[t]he State exerts great authority and coercive power through mandatory attendance requirements, and because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure." *Edwards v. Aguillard*, 482 U.S. 578, 583-84 (1987).

So while I recognize that we assess a legislature's stated purpose with some deference, let's call a spade a spade—statutes like these are about prayer in schools. In my view, the legislature's decision to make the Act mandatory represents an effort to introduce religion

into Illinois public schools, couched in the "hollow guise" of a mandated period of silence. *See Brown v. Gilmore*, 258 F.3d 265, 282 (4th Cir. 2001) (King, J., dissenting). While the secular purposes articulated by the state might not be "shams," it seems clear to me that to whatever extent they are genuine, they are secondary to religious ones. I share the concerns raised by a number of legislators who expressed their doubts about the true purpose behind amending the Act. As one House member stated during floor debate, "[t]he only reason I can see for requiring this silent moment is to encourage prayer in the public schools." H.R. Proceedings, 95th Ill. Gen. Assem., May 31, 2007, at 64 (statement of Rep. Currie). And as another representative stated, "[Y]es, this doesn't mandate prayer, but let's face it that's what this is about . . . . [t]he only calls I received about this Bill were people who were rabbis and priests and reverends and people who are interested in having prayer in the public schools." H.R. Proceedings, 95th Ill. Gen. Assem., Oct. 11, 2007, at 90 (statement of Rep. Lang). I do not believe that the Illinois legislature truly adopted this law with a secular purpose, and for that reason it violates the first prong of the *Lemon* test. *See Lemon*, 403 U.S. at 612; *see also Santa Fe*, 530 U.S. at 315-16.

The majority states that there is no legislative history indicating that it was the goal of any legislators to introduce prayer into schools. (Op. at 15, 27). I disagree. There are troubling statements in the record indicating religious motivations on the part of some of the Act's supporters. The bill's chief sponsor, Senator Kimberly Lightford, said this to the press: "Here in the General

Assembly we open every day with a prayer and Pledge of Allegiance. I don't get a choice about that. I don't see why students should have a choice." And when the bill was first up for a vote, some legislators broke out into song on the House floor, singing the following words to the tune of Simon and Garfunkel's "Sounds of Silence":

> *Hello school prayer, our old friend*
> *It's time to vote on you again*
> *In our school house without warning*
> *You seek a moment in the morning.*

I agree with the majority that there are, of course, statements of secular purpose in the legislative record. But I part ways with my colleagues in that I simply have trouble accepting those purposes as anything more than pretextual. *See, e.g.*, *May v. Cooperman*, 780 F.2d 240, 251 (3d Cir. 1985) (affirming district court's conclusion that legislators' stated purpose for period of silence, "to provide a transition from nonschool life to school life," was pretextual); *see also Edwards*, 482 U.S. at 594 ("The plain meaning of the statute's words . . . can control the determination of legislative purpose."). The Act's purported secular goal—establishing a period of silence to calm students and prepare them for the day—could be achieved before it was made mandatory in 2007. If Illinois's public school teachers (who are in the best position to assess the matter) felt students needed a period of silence for a calming, transitional period in the morning, they have had the authority to impose one since 1969. Here, just as in *Wallace*, "[a]ppellants have not identified any secular purpose

that was not fully served by [existing state law] before the enactment of [the statute in question]." *Wallace v. Jaffree*, 472 U.S. 38, 59 (1985); *see also Edwards*, 482 U.S. at 587-88.

If legislators truly wanted to mandate a meditative, calming period of silence for students, all they had to do was model the Act after Georgia's period-of-silence statute, O.C.G.A. § 20-2-1050. The Georgia law is nearly identical to the statute here, except that it does not refer to prayer. *Compare* O.C.G.A. § 20-2-1050(b) (period "shall be considered as an opportunity for a moment of silent reflection on the anticipated activities of the day") *with* 105 ILCS 20/1 (period "shall be an opportunity *for silent prayer* or for silent reflection on the anticipated activities of the day") (emphasis added). The Eleventh Circuit upheld the Georgia statute in *Bown v. Gwinnett County School Dist.*, 112 F.3d 1464, 1469-72 (11th Cir. 1997), finding it had a valid secular purpose and that it did not convey a message of endorsement of religion. It is fair to assume that the drafters of the recent amendment to the Act were aware of statutes like Georgia's. The fact that they chose not to follow the Georgia model is revealing.

My colleagues correctly point out that the Illinois drafters were just as likely aware of a number of other states' period-of-silence laws that do mention prayer. (Op. at 18 n.4). But the difference between every statute the majority lists and the Georgia statute is that Georgia's has survived a post-*Wallace* First Amendment challenge in a federal court of appeals. So if the legislators really did intend to simply mandate a period of silence for secular purposes, one might think that when

amending the Act they would have modeled it after a statute they could be confident was appropriately doing just that. *See County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 618 n.67 (1989) (availability of secular alternative is "obvious factor" in deciding whether government's choice constitutes an endorsement of religion).

The majority believes that the mention of prayer in the Act is warranted to "negate any impression" students may have that prayer is *not* permitted, an impression that might come from the clause that says the period "shall not be conducted as a religious exercise." (Op. at 29). That argument might be more persuasive if Section 1 was the only part of the Act. But immediately following that clause, the Act goes on to say this:

> Student prayer. In order that the right of every student to the free exercise of religion is guaranteed within the public schools and that each student has the freedom to not be subject to pressure from the State either to engage in or to refrain from religious observation on public school grounds, students in the public schools may voluntarily engage in individually initiated, non-disruptive prayer that, consistent with the Free Exercise and Establishment Clauses of the United States and Illinois Constitutions, is not sponsored, promoted, or endorsed in any manner by the school or any school employee.

105 ILCS 20/5. I have difficulty with the idea that any reasonable person, reading the above (in, remember, a law called the "Silent Reflection and Student Prayer Act"), could come away with even the slightest impression

that prayer might not be a permissible activity during the period of silence. In light of Section 5, there is simply no negative inference about prayer that needs to be rebutted.

The majority claims that Section 5 is unrelated to Section 1. (Op at 21). But in interpreting a statute, we look not only to the specific statutory language at issue, but to "the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *see also Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 568 (1995) (court's duty is "to construe statutes, not isolated provisions."); *Square D. Co. and Subsidiaries v. C.I.R.*, 438 F.3d 739, 745 (7th Cir. 2006). Section 5 is thus directly relevant to understanding the purpose of the Act. Nor does Section 5 address an "entirely separate issue" than Section 1. (Op. at 20). Section 5 codifies (unnecessarily, I might add) the First Amendment right of students to engage in "individually initiated, non-disruptive prayer." Isn't that what "silent prayer" under Section 1 is?

While I question the decision to reference prayer in the Act here, I also recognize that inserting the term does not automatically render every period-of-silence statute unconstitutional. *See, e.g., Wallace v. Jaffree*, 472 U.S. 38, 76 (1985) (O'Connor, J., concurring) ("A moment of silence law that is clearly drafted and implemented so as to permit prayer, meditation, and reflection within the prescribed period, without endorsing one alternative over the others, should pass this test."). Post-*Wallace*, two of our sister circuits have indeed upheld period-of-silence statutes that directly reference prayer as an

option. *See Croft v. Governor of Texas*, 562 F.3d 735, 750-51 (5th Cir. 2009); *Brown*, 258 F.3d at 282. But the statutes in those cases differ from the Act here in a critical way: they provide "catch-all" alternatives to the prayer option. The Act, in contrast, provides a forced, binary choice between two substantively specific activities—(1) pray; or (2) silently reflect on the anticipated activities of the day—and in so doing, conveys the message that the state of Illinois favors these two activities over a host of other silent options. To the extent that a reference to prayer *is* permissible in a period-of-silence statute, the Act here still fails to pass muster. *See Wallace*, 472 U.S. at 73 (O'Connor, J., concurring) ("The face of [a] statute . . . may clearly establish that it seeks to encourage or promote voluntary prayer over other alternatives.").

In *Brown*, the Fourth Circuit rejected an Establishment Clause challenge to a Virginia period of silence statute during which a student could "in the exercise of his or her individual choice, meditate, pray, *or engage in any other silent activity*." Va. Code Ann. § 22.1-203 (emphasis added). Assessing the language of the statute, the Fourth Circuit noted that "[b]ecause the state imposes no substantive requirement during the silence, it is not religiously coercive." *Brown*, 258 F.3d at 281. The court noted with approval the fact that the word "pray" in the Virginia statute was coupled with "an *unlimited* range of mental activities that are authorized during the minute of silence." *Id.* at 281-82 (emphasis added). The Act, in contrast, does impose a substantive require-ment during the silence—there are only two specific

choices, pray or think about that day's activities—instead of coupling the prayer option with an unlimited range of other permissible activities.

And in *Croft*, the Fifth Circuit evaluated a challenge to a Texas period of silence law that also had a catch-all non-prayer option. *See* 562 F.3d at 738-39. The Texas statute provided for a period during which "each student may, as the student chooses, reflect, pray, meditate, *or engage in any other silent activity*." Tex. Educ. Code 25.082(d) (emphasis added). The Fifth Circuit noted with approval the fact that the Texas statute "clearly state[s] that children may pursue '*any* other silent activity' during the moment of silence. 'Not praying' is thus covered by the catchall provision." 562 F.3d at 749 (emphasis in original, citation omitted). The *Croft* court also noted that the Texas statute is "facially neutral between religious and non-religious activities." *Id.* Again, this is in stark contrast to the Act here. The Act here is *not* facially neutral between religious and non-religious activities. It specifically highlights prayer as one of two permissible choices, and in so doing elevates it as a preferred activity over many non-religious options.

The majority disagrees with the premise that the Act mandates a binary either/or choice, and instead concludes that it permits "any silent activity." (Op. at 32). But that simply is not what the Act says. It is a primary rule of statutory interpretation that we give words in a statute their plain and ordinary meaning. *See Ind. Forest Alliance, Inc. v. U.S. Forest Serv.*, 325 F.3d 851, 857 (7th Cir. 2003). The words in the Act are very clear: they say

that the period "shall"—a mandatory, not discretionary term, *see Robinson Farms Co. v. D'Acquisto*, 962 F.2d 680, 684 (7th Cir. 1992)—be an opportunity for (1) silent prayer <u>or</u> (2) silent reflection on the anticipated activities of the day. I, like the district court, interpret this language as limiting the permissible choices to those two specific options.

Phrasing the two choices as "opportunities" does not matter. If the Act said that the moment of silence "shall be an opportunity for silently thinking about Shakespeare or for silent reflection on the anticipated activities of the day," could anyone seriously argue that the Act was not expressing a preference on the part of the State of Illinois that its public school students engage in these two activities over others? Calling the two options "opportunities" does nothing to change the fact that they are being expressly highlighted and endorsed. *See Brown*, 258 F.3d at 290 (King, J., dissenting) ("I am not comforted by the . . . statute's allowance of 'choice.' Simply because the Commonwealth does not explicitly require its public school students to pray does not mean that they are not being subtly coerced to do so."). Again, why list prayer as an example at all? The answer is because, professed secular goals notwithstanding (at least two of the Act's supporters actually claimed that the period of silence might lessen bullying and school shootings), the true purpose of statutes such as this one is to promote prayer. *See id.* at 284 n.3 (King, J., dissenting) ("any objective observer" should recognize that "the real purpose" of the Virginia statute at issue is endorse-

ment of prayer in public schools); *see also* Christine Rienstra Kiracofe, "Pretending Not To Pray?: A Historical Overview of Moment of Silence Legislation and Why Illinois' Statute Clearly Violated the Lemon Test," 241 *Ed. Law. Rep.* 1, 16 (2009) ("Although the state of Illinois argued that [the Act] did, in fact, have a secular purpose, the history of the bill and its sponsors seemed to suggest otherwise.").[1]

The majority quotes statements from some legislators indicating that they intended the period to be a time for "any silent thought." (Op. at 31). But such statements fly directly in the face of what the Act unambiguously says, and it is the words of the statute that control. *See DirecTV, Inc. v. Barczewski*, 604 F.3d 1004, 1008 (7th Cir. 2010) ("Legislative history comes into play only when necessary to decode an ambiguous enactment."). If the Illinois legislature wanted the range of permissible options to be broader, it certainly possessed the vocabulary to have expressed that. It is not our place to rewrite the statute to say something it does not. The Act

---

[1] It is also worth noting that while this case was pending before the district court, Illinois lawmakers made efforts to modify the Act through additional legislation. One bill, HB 4180, would have changed the name of the Act to the "Student Silent Reflection Act" and changed the period of silence back from mandatory to optional. Another bill, HB 4186, would have similarly removed the word "prayer" from the Act's title, and would have removed Section 1's reference to silent prayer. Both bills failed. *See* Kiracofe at 15.

says what it says. And even under the alternative
reading advanced by the majority—that the choices are
simply nonlimiting examples—isn't the Act still at least
expressing a *preference* for those enumerated activities?
*See Santa Fe*, 530 U.S. at 316 ("[T]he simple enactment of
this policy, with the purpose and perception of school
endorsement of student prayer, was a constitutional
violation.").

The majority further concludes that it would be "unrea-
sonable" to interpret the statute as limiting the choices
to prayer or reflection, because teachers cannot possibly
know what a student is thinking. (Op. at 32). I agree
that there are obvious problems with enforcement of the
Act, but questions about implementation do not change
what the statute says. Realistically enforceable or not
(and I agree with the district court's conclusion that
compliance with the Act will require that teachers
explain the two options to students), the Act, on its
face, expresses a preference for prayer as one of
two specific activities that the state of Illinois wants
schoolchildren to engage in, over all others. This is
impermissible. *See Santa Fe*, 530 U.S. at 316.

There is a "line between creating a quiet moment
during which those so inclined may pray, and affirma-
tively endorsing the particular religious practice of
prayer. This line may be a fine one, but our precedents
and the principles of religious liberty require that
we draw it." *Wallace*, 472 U.S. at 84 (O'Connor, J., concur-
ring). I believe that by referencing prayer unneces-
sarily, and by making it one of only two specific activi-
ties permitted during the period, the Act falls on the

wrong side of this line. I would affirm the district court's ruling that the Act as written violates the Establishment Clause.